FONS A. HATHAWAY, as Chairman and E. P. GREEN, W. J. HILLMAN, J. HARVEY BAYLISS, and I. E. SCHILLING, as members of and constituting the State Road Department of the State of Florida, *Appellants,* v. MARK W. MUNROE, *Appellee.*

En Banc.

Opinion filed July 22, 1929.

30

*Fred H. Davis,* Attorney General, *H. E. Carter,* Assistant Attorney General, *D. Stuart Gillis, W. J. Oven* and *B. A. Meginniss,* for Appellants;

*Watson & Taylor,* for Appellee.

### STATEMENT.

TERRELL, C. J.—On December 8th, 1928, Mark W. Munroe filed his bill of complaint in the Circuit Court of Leon County against Fons A. Hathaway and others as members of the State Road Department seeking to restrain them from awarding any contracts, accepting any bids on contracts or the execution of any contract on bids received

by the State Road Department for certain road and bridge construction in this State.

As a predicate for such restraining order, the bill in effect alleges that the execution of such contracts would be illegal because; (1) the State Road Department has not adopted a budget for the year 1928 as required by law; (2) that the said contracts if executed would be in excess of the estimated income of the State Road Department for the year 1928, and (3) the State Road Department is already indebted in amounts actually due and near due by more than a million dollars in excess of the funds on hand and to be anticipated during the remainder of the budget year. In view of all of which allegations it is contended that the letting of said contracts and the contracting for the construction of said projects and the furnishing of work, labor and material therefore would be in violation of the language, spirit and intent of Secs. 2 and 6 of Art. IX of the Constitution of Florida.

At a hearing held December 10th, 1928, in which the State Road Department was not represented, a temporary restraining order was granted. A motion to dissolve the temporary restraining order was at once made and presented and granted as to projects 52, 763 and 765, but was denied in all other respects, several procedural matters which do not effect the disposition of the cause having in the meantime been heard and disposed of. Appeal is taken from the decree of the chancellor dated December 10th, 1928, granting a temporary restraining order and from his decree dated December 15th, 1928, refusing to dissolve the said temporary restraining order and from his decree dated December 17th, 1928, overruling the demurrer to the bill of complaint as amended and further refusing to dissolve the temporary restraining order.

The cause now comes on to be heard on an application for an order of this court superseding the orders appealed from.

WHITFIELD, J.—In a suit brought by a citizen tax payer, the chancellor granted and refused to vacate an order enjoining the awarding and execution of stated highway construction contracts by the State Road Department. An appeal was taken and a supersedeas is asked on the grounds that a citizen taxpayer has no right to maintain the suit and that the proposed contracts are legal and within the authority conferred by existing statutes. Sec. 1644, Comp. Gen. Laws 1927; Sec. 1, Chap 9312, Acts 1923.

A citizen taxpayer may have a right to maintain a suit to enjoin the execution of illegal contracts involving payments from a public fund to which the citizen taxpayer is a contributor. See Anderson v. Fuller, 51 Fla. 380, 41 So. R. 684, 6 L. R. A. (N. S.) 1026n, 120 Am. St. 170; Rickman v. Whitehurst, 73 Fla. 152, 74 So. R. 205. The wisdom or policy of official action may not be a predicate for an injunction when the action taken does not involve illegality or a palpable abuse of authority amounting to illegality.

Whether a supersedeas should upon appropriate application be granted, is for judicial determination upon due consideration of all rights in the premises, of the effect of a supersedeas upon the subject matter and of the main objects of the suit or action. See Willey v. Hoggson, 89 Fla. 446, 105 So. R. 126 and authorities cited, 44 Fla. 244; 41 Fla. 494.

A supersedeas is generally invoked to maintain the *status quo* of the property or of the rights constituting the subject matter of the litigation, pending appellate proceedings. In general a supersedeas will be granted if it will preserve the rights of the parties pending appellate review

and if the record properly presents a substantial debatable question materially affecting the rights of the parties in the premises. But if a supersedeas would permit the status of the subject matter to be changed so as to render subsequent proceedings in the cause ineffectual with reference to the main objects of the suit, it should be denied unless upon due consideration it is clear that the order or decree to be superseded is erroneous.

If this were an ordinary *ex parte* application for a supersedeas, it should be denied so that the contemplated contracts would be held in abeyance until their validity could be determined in due course of appellate procedure, since a supersedeas would in effect deny the main relief sought before a full hearing is had. If on full hearing and consideration by the Court the order appealed from is found to be correct a supersedeas should be denied. Crawford v. Gilchrist, 64 Fla. 41, 59 So. R. 963, An. Cas. 1914 B. 916. See also Jacoby v. Shomaker, 26 Fla. 502, 7 So. R. 855. But this application for a supersedeas is made to the Court *en banc* and the matters of law involved have been briefed and orally argued by a counsel for all parties; and if upon due consideration the Court is of opinion that as matter of law on the record as presented the injunction should not stand, a supersedeas should be granted by the Court, since the case is entitled to precedence and has been heard on full argument.

The contention of the complainant in effect is that as the particular State highway construction contracts were proposed to be made in December 1928 though they could not be performed during that year, the contracts if entered into would unlawfully anticipate the budget for 1929 and would violate the provisions of Sections 2 and 6 of Article IX of the State constitution that "the Legislature shall provide for raising revenue sufficient to defray the expenses

of the State for each fiscal year''; and that ''the Legislature shall have power to provide for issuing State bonds only for the purpose of repelling invasion or suppressing insurrection''.

Section 2 of Article IX contemplates that sufficient revenues shall be raised each year to defray the expenses of the State for that year and that during any fiscal year no indebtedness for expenses of the State shall be incurred substantially in excess of the revenues that may be provided for that year. Section 6, Article IX in effect forbids the issuing of State bonds or other evidences of State indebtedness except to repel invasion or to suppress insurrection in the State, the State now having no outstanding bonds to be redeemed or refunded.

In Re Advisory opinion, 94 Fla. 967, 114 So. R. 850, the question was the authority of a State agency to borrow money. No such question is involved in this case.

A contract under the statute for constructing State highways is not a violation of Section 2, Article IX, when the construction is to be paid for from funds already provided for by law and which will probably be in hand before the construction is completed. And such a contract does not violate Section 6, of Article IX, since it does not involve the borrowing of money or the issuing of bonds or other evidences of State debt, but merely provides for paying for State highway construction as the work is done. The statute requires the State Road Department to make in January of each year an estimate of its resources for the ensuing year which are available for road construction and maintenance and to make a budget of work so planned as to exhaust the estimated resources of the department for the year, with stated exceptions; but the statute does not require road construction contracts to be entirely performed during the year in which the contracts are made.

Nor does the statute forbid the making during any year of construction contracts that are contemplated by the budget of that year, though the contracts are to be performed in a succeeding year and to be included in the budget and compensated for from the revenues of such succeeding year. It is expedient and for the public interest that contracts be made for highway construction as such contracts may be duly authorized and most needed under all pertinent considerations; and a reasonable range of discretion should be allowed administrative officers when acting in good faith within the general scope of their authority. Fraud is not alleged. While a showing that the State Road Department did not adopt a budget for 1928 in the manner required by statute and that the resources for 1928 will not pay all of the accounts for the year 1928, may tend to show a violation of the budget law as to such unpaid accounts, and while this with a further showing that State highway construction contracts that are contemplated by the budget of one year are proposed to be made the latter part of that year to be paid from the contemplated revenues of the succeeding year might raise questions of policy and of administration, yet such matters alone do not render the contracts illegal, even though the statute requires a budget to be made at the beginning of each year and requires construction sufficient to exhaust the budget revenues; since the contracts are not accounts due in excess of the current budget, and the statute does not provide for annual construction units, but contemplates continuous construction at the points and as may be needed, to be paid for from annual resources which are to be exhausted each year but not substantially exceeded any year by construction operations.

Even though the unpaid accounts of 1928 may illegally exceed the revenue of the department for that year, that

alone does not render illegal any construction contracts that are to be performed after 1928 and to be paid for from funds already provided by law to be raised for future budgets. Aside from the unpaid accounts for construction in excess of the 1928 revenues which may be a violation of the budget law, there is no showing that the contracts are not for proper construction under controlling statutes, or that the budget for 1929 will be unduly impaired by the contemplated construction contracts or that the making of the contracts is a palpable abuse of authority under existing statutes.

Supersedeas granted.

TERRELL, C. J., AND BROWN AND BUFORD, J. J., concur.

STRUM AND BROWN, J. J., concur specially.

ELLIS, J., dissents.

STRUM, J., (concurring specially) :

In my judgment, complainant's allegations as to the injury he will suffer as a taxpayer by the consummation of the proposed official action of the defendants do not meet the test prescribed by this court in either Rickman v. Whitehurst, 73 Fla. 152; 74 So. R. 205; or in Anderson v. Fuller, 51 Fla. 380; 41 So. R. 684, so as to entitle complainant by the method attempted in his bill to protect as a taxpayer, the integrity of 1929 revenues of the Road Department against the letting of contracts involving disbursements from those funds, even though such contracts be illegal or unauthorized. I therefore concur in the order granting a supersedeas.

BROWN, J., concurs.

BUFORD, J.—A statement of this case prepared by Mr. Justice Terrell precedes the opinion prepared by Mr. Justice Whitfield.

I concur in the views expressed in the opinion of Mr. Justice Whitfield.

In the case of Rickman v. Whitehurst, 73 Fla. 152, 74 So. R. 205, the Court, speaking through Mr. Justice Ellis, say:

> A citizen and taxpayer of a county may maintain a bill in chancery against public officials of the county to restrain the unlawful expenditure of public funds, upon a showing made in such bill of peculiar injury to him which may result from such unlawful expenditure of such funds.
>
> To entitle anyone to relief against real or imaginary evils or injuries which are supposed to flow from unauthorized acts of public officials, he must bring his case under some acknowledged head of equity jurisdiction and show what special injury he will sustain from such unauthorized acts distinct from that suffered by every other inhabitant.

It appears to me that the principles above enunciated must be applied to the case at bar and when so applied to the bill of complaint the conclusion follows that the complainant in this case has not alleged such a state of facts as to show that he is entitled to maintain this suit as a citizen and taxpayer and, therefore, the petition for supersedeas should be granted.

ELLIS, C. J., dissenting:

I am unable to agree with my fellow members of the Court in the conclusion reached by them to allow a supersedeas to the appeal taken in this case.

The questions presented in the Chancery Court and which were determined adversely to the defendants, appellants here, were as follows:

First, the right of the complainant, appellee here, as a citizen and tax payer to the relief prayed for in the bill. The complainant rests his equity upon the proposition that a taxpayer is necessarily affected and his burdens of taxation increased by any unlawful act of a State agency which may increase the burden to be borne by taxpayers of the county or State and that no relief from such injury is obtainable elsewhere than in a court of equity. In other words, a taxpayer's injury specially induced by the unlawful act is the basis of his equity, upon which he may seek relief to restrain the commission of such unlawful acts.

That proposition was definitely and in like terms declared by this Court to be the law in this State. See Rickman v. Whitehurst, 73 Fla. 152, 74 So. R. 205.

Second, whether the State Road Department did at a meeting held in January, 1928, adopt a budget of maintenance and construction work to be done by the Department during the ensuing year as the law requires it to do. See Sec. 1544, Comp. Gen. Laws Fla. 1927.

And whether the expenditures contemplated by such budget of maintenance and construction work for the year 1928 should be limited by the estimate of the Department's resources for such year available for such work.

In other words, should not the contracts made by the Department for construction work and maintenance during any one year be limited in the amount of expenditures contemplated by such contracts by the estimated resources of the Department for such year available for such work.

The Chancellor definitely found the fact to be that no such budget as the law required was made by the Department at any meeting in January, 1928, and held the law to

be that contracts made by the Department for mainte-
nance and construction work during the year should be
limited in the amount of expenditures contemplated by
such contract by the estimated resources of the Department
for such year.

Third, whether the phrase "resources for the ensuing
year", as used in the first clause of the Section 1644, *supra,*
requiring the State Road Department at a "meeting to be
held in January of each year" to make an estimate of its
"resources for the ensuing year" which are available for
the construction and maintenance of roads, means the year
from July 1st of the calendar year in which the estimate
of resources is required to be made to July 1st in the next
succeeding calendar year, or whether it means the calendar
year following in chronological order the month of January
in which the budget is required to be made.

The Chancellor held that the phrase "ensuing year"
meant the current calendar year following in chronological
order the month of that year in which the budget is re-
quired by law to be made.

Fourth, whether the Department has power to let con-
tracts for construction and maintenance of roads in any
year insuing the making of the budget in January which
will exceed in contemplated expenditures the estimated re-
sources of the Department for such year.

The Chancellor held that the Department had no such
power.

Fifth, whether the debts of the Department for the
year 1928 exceeded the moneys on hand and the estimated
and prospective income for the Department during the re-
mainder of the year.

The Chancellor held the fact to be that such debts and
amounts to become owing on contracts already let are in

excess of the estimated income of the Department for the year 1928 by more than one million dollars.

Sixth, whether the proposed contracts, the letting of which was restrained by the court's order, would create debts and obligations of the Department which could only be paid from the revenue of future years and would be made in anticipation of such revenue of future years.

The Court found the fact to be as stated in the question, that is to say, the affirmative of that proposition. The contracts, the letting of which was restrained by the Court's order contemplated, an expenditure from the revenue of other years than the year 1928 of upwards of $1,300,000.

These questions and others related are presented to this Court by the appeal.

To grant a supersedeas in this case would be in effect to destroy the very purpose for which a supersedeas is issued by the Supreme Court in such cases which is to preserve its power to exercise jurisdiction. See Re Claasen, 140 U. S. 200, 35 L. Ed. 409.

If a supersedeas is granted which would suspend the operation of the Chancellor's order there would be no obstacle in the way of the letting of the proposed contracts which could be done before this Court could determine this case upon its merits. The injury to the complainant, which is the basis of his equity, would have been in such event committed and the question so far as he is concerned will have become a moot one for there would be no other redress.

Thus the granting of a supersedeas in this case would be in effect a summary disposition of the case upon its merits.

The questions presented are important ones vital to the State's interests involving the exercise of powers by an agency of the State which are forbidden by the Constitution as construed by this Court.

The questions presented here should not by such short method be thus determined. They should be determined only after full and exhaustive argument in which the parties interested have had ample opportuity to be heard. I, therefore, think that the supersedeas should be denied.