456 So.2d 904 (1984)
FRIENDS of the EVERGLADES, INC., a Non-Profit Florida Corporation, and Upper Keys Citizens Association, Inc., a Non-Profit Florida Corporation, Appellants,
v.
BOARD OF COUNTY COMMISSIONERS OF MONROE COUNTY, Florida and City National Bank of Miami, As Trustee, Appellees.
FRIENDS OF the EVERGLADES, INC., a Non-Profit Florida Corporation, Appellant,
STATE of Florida, DEPARTMENT OF COMMUNITY AFFAIRS and City National Bank of Miami and Monroe County, Florida, Appellees.
Nos. AS-156, AS-423.
District Court of Appeal of Florida, First District.
July 25, 1984.
*905 Michael F. Chenoweth, Miami, for appellant Friends of the Everglades.
Thomas G. Pelham of Akerman, Senterfitt & Eidson, Tallahassee, for appellant Upper Keys Citizens Ass'n, Inc.
Lucien C. Proby, Jr., County Atty., Key West, for appellee Monroe County.
Alan S. Gold and Anthony J. O'Donnell, Jr. of Greenberg, Traurig, Askew, Hoffman, Lipoff & Zuenten, Miami, for appellee City Nat. Bank.
C. Laurence Keesey, Tallahassee, for appellee Dept. of Community Affairs.
Linda Koenigsberg, Miami, for amicus curiae Florida Chapter of The Sierra Club.
ERVIN, Chief Judge.
In these two separate appeals, the Friends of the Everglades, Inc. (Friends), and the Upper Keys Citizens Association, Inc. (UKCA), appeal a final order of the Florida Land and Water Adjudicatory Commission (FLWAC) dismissing for lack of standing their administrative appeals from a Monroe County development order taken by Friends and UKCA after the South Florida Regional Planning Council (SFRPC) and the Florida Department of Community Affairs (Department) declined to so appeal (Case No. AS-156). Friends also appeals orders of dismissal entered by the Leon *906 County Circuit Court in a suit for injunctive relief brought by Friends pursuant to Section 403.412(2), Florida Statutes (1971), seeking to compel the Department to take an appeal to FLWAC or to commence an alternative equitable action to halt the development of Port Bougainville on North Key Largo (Case No. AS-423). Finding no error in Case No. AS-156, we affirm as to that case, but reverse the final order of dismissal in Case No. AS-423 and remand with directions.
The factual circumstances in both appeals stem from the development of Port Bougainville, located on Key Largo, a development of regional impact (DRI) which was commenced in 1973. As the result of a foreclosure, the City National Bank of Miami, as trustee, acquired title to the property in 1980. By that time changes had been made in the original development plan, changes which had been approved by Monroe County. In 1981 additional changes were approved by the county without the requisite determination of whether such changes amounted to a substantial deviation.
In mid-1982 the Department first learned of the 1981 changes, and on August 2, 1982 filed suit in Monroe County to halt construction until a substantial deviation determination could be made. The following day representatives of the developer and the Department met in Tallahassee and reached an agreement whereby construction would be halted for up to 90 days, during which time the developer would submit its revised plans to the county, the Department and SFRPC for review, the county would issue no new permits, and the Department would dismiss its suit without prejudice. Shortly thereafter, representatives of the developer, the Department and SFRPC met in Key West to discuss procedures to be followed in the review process, resulting in the preparation by SFRPC's staff of a memo outlining the tentative agreements reached.[1]
In October, Friends learned of the review proceedings which were underway and of the tentative agreements reached by the developer, the Department and SFRPC. Friends immediately sought to delay the public hearings scheduled on October 22 and 25 and at the same time filed petitions with the Department and SFRPC, challenging the validity of the tentative agreements reached by the parties.[2] When the public hearings were not delayed, Friends intervened *907 in the proceedings before both the local zoning board and the Monroe County Commission pursuant to Section 403.412(5), Florida Statutes (1971), and appeared before them, voicing its opposition to the granting of an amended development order and to what it considered were procedural due process violations. Despite its opposition, an amended development order was adopted by the county commission on October 24, 1982.
Friends' next move was to file a complaint, pursuant to section 403.412(2), with the Department, requesting that an appeal of the amended development order be taken to FLWAC. When the Department declined, Friends and UKCA filed notices of appeal with FLWAC, and, apparently in an abundance of caution, Friends sought injunctive relief in the Circuit Court of Leon County to compel the Department to appeal the action taken by the county to FLWAC. The direct appeals by Friends and UKCA were assigned to a hearing officer who recommended dismissal of the appeals because neither Friends nor UKCA had standing to initiate such appeals. FLWAC agreed and a final order of dismissal was entered on March 8, 1983, which order is the basis for the appeal in Case No. AS-156.
In the suit before the Circuit Court, a preliminary injunction was initially entered, attempting to "toll" the time in which the Department could perfect an appeal to FLWAC. The injunction was later dissolved, and the case dismissed upon a finding that the circuit court had no authority to extend the jurisdictional time limits within which an appeal could be taken. Friends then filed a second complaint, requesting the court to enter an injunction compelling the Department to halt construction until full review could be had. The dismissal of those complaints forms the basis for the appeal in Case No. AS-423. Although not consolidated, both appeals will be separately addressed in this one opinion in the interest of judicial economy.

CASE No. AS-156
We find that the proper resolution of this case involves two basic issues: (1) whether Friends and UKCA have standing to appeal a development order to FLWAC after the developer, the property owner, the Department or the SFRPC have declined to do so, and, if not, (2) whether Section 380.07(2), Florida Statutes (1972),[3] limiting standing only to those four groups, should be held unconstitutional? The answer to those issues first requires a review of the legislative purposes behind Chapter 380, Florida's Environmental Land and Water Management Act of 1972, which, in part, was intended to facilitate "orderly and well-planned development" within this state. Section 380.021, Florida Statutes (1972). One of the principal architects of the Environmental Land and Water Management Act advises that the legislature intended to emphasize five major policies:
[T]hat land regulation should remain as close to those affected as possible; that a large, centralized bureaucracy should be avoided; that the decision-making process should provide for a balanced consideration of all the competing environmental, economic, and social factors; that the state should have a potential *908 regulatory capacity both geographically, in critical areas, and functionally, such as in construction of major public facilities; and that the decision-making process should provide for expeditious decisions on development applications within an institutional framework guaranteeing maximum protection against arbitrary action.
Finnell, Coastal Land Management in Florida, 1980 Am.B.Found. Research J. 303, 336-337 (e.s.) [Finnell]. By its enactment, the legislature established a scheme wherein the rights of the local government, the region and the state would be preserved while, at the same time, preserving also the rights of the landowner by "including a specific timetable compelling expeditious action in order to quickly resolve the question of governmental dictates as to the use of his land." Sarasota County v. Beker Phosphate Corporation, 322 So.2d 655, 658 (Fla. 1st DCA 1975). See also Graham v. Estuary Properties, Inc., 399 So.2d 1374, 1377 (Fla. 1981) (competing interests of state and landowner must be balanced). In heeding the legislative purposes outlined above, one should remember that the development of the regional impact process does not replace local regulatory procedures which must be followed by all property owners seeking to develop their property. Rather, the DRI process imposes additional restraints on the right of the owner or developer of a large scale development, which will have regional as well as local impact, to make use of his property. Suwannee River Area Council Boy Scouts of America v. State, Department of Community Affairs, 384 So.2d 1369, 1374 (Fla. 1st DCA 1980). Because of that added burden, we have recognized:
[I]t is not the purpose of Chapter 380 to provide a forum for parties whose complaints focus on alleged detriment to activities they wish to conduct on adjoining land. "Regional impact" is concerned with matters affecting the public in general, not special interests of adjoining landowners.
Id. Although the DRI process is unquestionably subject to open and public debate at the local level, it is nevertheless "primarily a comprehensive land use review technique for large scale development involving primarily two groups  developers ... and ... governmental planners and permitting authorities." Caloosa Property Owners Association, Inc. v. Palm Beach County Board of County Commissioners, 429 So.2d 1260, 1264 (Fla. 1st DCA 1983). Therefore, once local officials have made their determination either to grant or deny an application for a DRI development order, the legislature has expressly limited the right to appeal such a decision to "the owner, the developer, an appropriate regional planning agency ... or the state land planning agency." Section 380.07(2) (e.s.). That express legislative grant of standing to only four groups or individuals, coupled with the above defined purposes of the DRI process in general and the goal of expeditious review in particular, so that the burden imposed upon the property owner is not increased by needless delay, has led this and other Florida courts to conclude that standing to appeal a development order to FLWAC is limited to those parties expressly stated in section 380.07(2). Accordingly, we have refused to create any judicial exceptions where none was intended. See Beker Phosphate; Caloosa; Londono v. City of Alachua, 438 So.2d 91 (Fla. 1st DCA 1983); Sarasota County v. Department of Administration, 350 So.2d 802 (Fla. 2d DCA 1977); Sarasota County v. General Development Corporation, 325 So.2d 45 (Fla. 2d DCA 1976). See also Finnell, supra at 378; Pelham, State Land-Use Planning and Regulation at 54-56 (1979) [Pelham]. Appellants, not falling within any of those categories, now ask this court to recede from its prior decisions on this issue and to carve out an exception to the standing rule. In so doing, they suggest several bases for such an exception, only two of which require discussion.
First, it is suggested that case law relating to the right of environmental groups such as Friends and UKCA to challenge local zoning decisions in circuit court *909 should be expanded to allow standing to such groups to appeal DRI orders to FLWAC. The argument is that such groups have traditionally had standing to challenge judicially local zoning decisions; that Chapter 380 has not abrogated that right; that Chapter 380 has been interpreted as having shifted review of local zoning decisions away from the circuit courts and instead to FLWAC, and that therefore public policy requires that Friends and UKCA be granted standing to appeal the DRI order, which necessarily includes local zoning decisions, to FLWAC.
We agree with appellants' first premise, recognizing that they have traditionally been granted limited standing to challenge zoning decisions. In Renard v. Dade County, 261 So.2d 832 (Fla. 1972), and, more recently, in Citizens Growth Management Coalition of West Palm Beach, Inc. v. City of West Palm Beach, Inc., 450 So.2d 204 (Fla. 1984), the Florida Supreme Court recognized that any "affected resident, citizen, or property owner" has standing to "attack a void ordinance, i.e., one enacted without proper notice required under the enabling statute or authority creating the zoning power", while individuals having a more direct interest in the zoning decision, i.e., those having special damages or legally recognizable interests which will be adversely affected, enjoy a broader grant of standing. Citizens Growth Management Coalition, 450 So.2d at 204. We thus have no quarrel with the assertion by Friends and UKCA that they would have, at the very minimum, standing in circuit court to challenge procedural irregularities in zoning decisions relating to Port Bougainville. See Save Brickell Avenue v. City of Miami, 395 So.2d 246 (Fla. 3d DCA 1981); Upper Keys Citizens Association, Inc. v. Wedel, 341 So.2d 1062 (Fla. 3d DCA 1977); Save Brickell Avenue, Inc. v. City of Miami, 393 So.2d 1197 (Fla. 3d DCA 1981).
We agree also that Chapter 380 has stated nothing to abrogate the rights of citizens to challenge local zoning decisions in circuit court. We do not agree, however, with appellants' next premise, i.e., that review of local zoning matters has been transferred to FLWAC exclusively, thus entitling them to exercise their limited standing to challenge local zoning issues before FLWAC. The major antecedent behind the DRI concept in Florida is that "most land-use decisions have no significant effect on state or regional interests and therefore should be made at the local level." Pelham, supra at 27. Chapter 380, accordingly, "carefully preserves the rights of local governments to the maximum extent possible in `zoning' property within its [sic] boundaries." Beker Phosphate, 322 So.2d at 658. We therefore conclude that there is nothing in Chapter 380 which otherwise overrides the clear legislative intent limiting standing to the four designated groups or individuals listed in section 380.07(2) to appeal DRI orders to FLWAC.
Second, appellants urge that they acquired standing to appeal the development order to FLWAC due to their being permitted to intervene in the local DRI process, thus making them parties for all purposes, including appeal. Intervention was accomplished with reference to Section 403.412(5), Florida Statutes (1971) which provides:

In any administrative, licensing, or other proceedings authorized by law for the protection of the air, water, or other natural resources of the state from pollution, impairment, or destruction, the Department of Legal Affairs, a political subdivision or municipality of the state, or a citizen of the state shall have standing to intervene as a party on the filing of a verified pleading asserting that the activity, conduct, or product to be licensed or permitted has or will have the effect of impairing, polluting, or otherwise injuring the air, water, or other natural resources of the state.

(e.s.) Although the authorities have suggested that intervention under section 403.412(5) may carry with it the right to appeal DRI orders to FLWAC notwithstanding the *910 lack of standing otherwise,[4]see Finnell, supra at 377-378 and Florida Bar, Continuing Legal Education, Environmental Regulation and Litigation in Florida, 20.39 (1981) [Environmental Regulation], we do not agree that section 403.412(5) creates a statutory exception to the limited standing granted by section 380.07(2). In reaching this conclusion, we are persuaded by the fact, as previously observed, that despite the encouragement of public input and participation at the local level, the DRI process is primarily one involving developers and property owners on the one hand and governmental planners on the other. Caloosa, 429 So.2d at 1264. In exchange for the developer's subjection to additional review, "red tape" and expense, he is promised expeditious action. Beker Phosphate, 322 So.2d at 658. The right to an expedited review, we believe, is insured by limiting standing to appeal the DRI decision of the local government to the individuals and groups enumerated in section 380.07(2).
The review procedure established by Chapter 380, providing for broad public participation at the local decision-making level, while limiting standing to appeal, is by no means novel in administrative settings, and is clearly within the legislature's prerogative. For example, in Daniels v. Florida Parole and Probation Commission, 401 So.2d 1351, 1354 (Fla. 1st DCA 1981), we discussed the varying levels of public participation provided by Florida's Administrative Procedure Act:
The fact that a person may have the requisite standing to appear as a party before an agency at a de novo proceeding does not mean that the party automatically has standing to appeal. The APA's definition of a party recognizes the need for a much broader zone of party representation at the administrative level than at the appellate level. For example, in rulemaking, a large number of persons may be invited or permitted by the agency to participate as parties in the proceeding, so as to provide information to the agency concerning a broad spectrum of policy considerations affecting proposed rules. Yet, a person who participates in such a proceeding by authorization of a statute or rule, or by permission of an agency, may not necessarily possess any interests which are adversely, or even substantially, affected by the proposed action.
(citation omitted)
That same view has been expressed by Professor Shapiro when discussing the effect of intervention before agencies and courts:
When one is granted intervention, either as of right or in the exercise of discretion, it does not necessarily follow that he must be granted all the rights of a party at the trial and appellate levels, including ... the right to appeal from a final decision.
Shapiro, Some Thoughts on Intervention Before Courts, Agencies, and Arbitrators, 81 Harv.L.Rev. 721, 727 (1968). We conclude, therefore, that intervention at the local DRI review level, whether pursuant to section 403.412(5), or by the grace of the local government authorities, does not create an exception to the express legislative limitation of standing found in section 380.07(2). If such an exception is to be created, then it is for the legislature to so provide  not this court.
In the alternative, Friends and UKCA argue that if they are denied standing to appeal a development order to FLWAC, section 380.07(2) operates to deny their constitutional rights of equal protection, access to the courts and due process, thus rendering that section unconstitutional. We have considered and rejected similar equal protection and access to courts challenges to section 380.07(2) in Caloosa and decline to reconsider these issues now. As to the issue of due process of law, appellants assert they were entitled to adequate notice and an opportunity to be heard *911 before the Monroe County Zoning Board and County Commission prior to approval by those bodies of a DRI development order. They contend they were denied that right, and that section 380.07(2), which acts to exacerbate such denial by precluding them from appeal, is therefore unconstitutional. We disagree. The concept of due process contemplates that before constitutionally recognized rights of life, liberty and property are infringed upon, the individuals having such rights must be given reasonable notice of the proposed action and an opportunity to appear and to be heard on the issue. Florida Public Service Commission v. Triple "A" Enterprises, Inc., 387 So.2d 940 (Fla. 1980). Because the "extent of procedural due process protections varies with the character of the interest and nature of the proceeding involved," it has been recognized that there is "no single, unchanging test which may be applied to determine whether the requirements of procedural due process have been met." Hadley v. Department of Administration, 411 So.2d 184, 187 (Fla. 1982). Accordingly, the task of determining "by what process and procedure legal rights may be asserted and determined provided that the procedure adopted affords reasonable notice and a fair opportunity to be heard before rights are decided", is left to the legislature. Peoples Bank of Indian River County v. State, Department of Banking and Finance, 395 So.2d 521, 524 (Fla. 1981).
Although it has been recognized that in enacting Chapter 380 the Florida legislature chose not to require the full panopoly of administrative procedures suggested by the Model Code, see Pelham, supra at 44, Chapter 380 nonetheless provides for public notice and hearing on applications for development approval, which proceedings are to be held "in the same manner as for a rezoning." Section 380.06(1). Case law instructs that procedures relating to rezoning require that "an affected landowner be given prior notice and an opportunity to be heard before action is taken by a zoning authority to alter the use to which the owner is permitted to put his land." Gulf & Eastern Development Corporation v. City of Fort Lauderdale, 354 So.2d 57, 59 (Fla. 1978) (e.s.). Similarly, such notice and hearing is required in DRI proceedings. But, it has also been recognized that due process does not require that the local zoning authority "hold a plebiscite" or "poll" the neighborhood on the issue. City of Apopka v. Orange County, 299 So.2d 657, 659 (Fla. 4th DCA 1974).
Accordingly, we find nothing in Chapter 380 to suggest that the legislature has failed to provide for due process prior to approval of DRI development orders. Once due process is furnished at the local level, the failure to afford further review does not violate due process concepts. Again, if review is permitted, "the legislature has the power to regulate and prescribe the procedure by which causes tried in the courts of the first instance shall be transferred for review to other tribunals." 10 Fla.Jur.2d, Constitutional Law § 373 (1979). Chapter 380 provides for notice and hearing at the local level and then provides for review by the FLWAC if the developer or property owner believes local authorities have acted improvidently in denying an application for development approval, or if the regional or state planning agencies believe that the public's interests will not be served by the local government's approval of a plan for development. Because it is within the legislature's prerogative to provide for procedures to be followed when the rights of property owners are to be affected by governmental action, and to provide for review of such action, we cannot conclude that the limitation of standing to appeal development orders to FLWAC to, on the one hand, property owners directly affected and, on the other hand, to agencies designated to represent the public's interest in such proceedings violates due process concepts.
To summarize our disposition of the issues raised under Case No. AS-156, we do not find that an exception to section 380.07(2) is created by either Friends' or UKCA's standing to challenge local zoning decisions before the circuit court, or their *912 intervention in the local DRI proceedings in this case. Nor do we find that the legislative scheme for broad public participation at the local level in the DRI process, coupled with limited standing to appeal the ultimate decision of local authorities, violates constitutional guarantees of equal protection, access to courts and due process. We therefore affirm the final order of FLWAC dismissing for lack of standing the appeals taken from the Monroe County development order by Friends and UKCA.

CASE NO. AS-423
In addition to filing a notice of appeal with FLWAC on December 9, 1982, Friends also filed a complaint in the circuit court of Leon County pursuant to section 403.412(2),[5] seeking to compel the Department to take an appeal from the Monroe County development order. Because the time for taking such an appeal would expire the day following the filing of the complaint, Friends obtained a preliminary injunction purporting to "toll" the time in which an appeal could be taken. We have no problem in affirming the later order dissolving the injunction and dismissing, with leave to amend, Friends' initial complaint because it is clear that
the trial court has no authority to extend the time within which to appeal beyond the time fixed by statute, even with the consent of the parties, and an order purporting to do so is ineffectual.
3 Fla.Jur.2d Appellate Review § 121 (1978); Salinger v. Salinger, 100 So.2d 393, 394 (Fla. 1958).
Friends then filed an amended complaint, again seeking relief pursuant to section 403.412(2), requesting, among other things, that the Department be compelled to institute appropriate legal action to enjoin development of Port Bougainville, restrain Monroe County from issuing permits for the development, and to compel the owner and developer to submit all future changes for review by the county, SFRPC and the Department. Concluding that the amended complaint failed to state a cause of action for injunctive relief against the Department, the trial court dismissed that complaint with prejudice. Although we agree that the amended complaint, as it now stands, fails to state a cause of action against the Department, we are of the opinion that, for the following reasons, the trial court abused its discretion by dismissing the complaint without leave to amend.
Section 403.412, Florida Statutes (1971), Florida's Environmental Protection Act, was enacted as a means of carrying out Florida's constitutional mandate to abate *913 air and water pollution within this state. Florida Wildlife Federation v. State, Department of Environmental Regulation, 390 So.2d 64, 66 (Fla. 1980). See also Art. II, § 7, Fla. Const. The act has been described as reflecting "a legislative purpose to provide a procedure whereby governmental bodies could be compelled to enforce applicable environmental laws and individuals, corporations and governmental bodies could be restrained from violating any of the applicable environmental laws." Orange County Audubon Society, Inc. v. Hold, 276 So.2d 542, 543 (Fla. 4th DCA 1973) (e.s. in original). Accordingly, it has been said to have "created a new cause of action, giving the citizens of Florida new substantive rights not previously possessed" and to enable those citizens to institute suit for the protection of their environment without a showing of "special injury" as previously required. Florida Wildlife Federation, 390 So.2d at 66-67. See also Comment, Environmental Law: The Inapplicability of the Special Injury Rule to the Florida Environmental Protection Act, 33 U.Fla.L.Rev. 425, 433 (1981). In lieu of the special injury requirement, however, individuals seeking to invoke the remedies provided by section 403.412(2) must satisfy the following conditions precedent to the bringing of such actions:
An interested party must first file a complaint with the appropriate agency. The complaint must set out the facts upon which it is based and the manner in which the complainant is affected. Thereafter, the agency has thirty days in which to act on the complaint. Only after meeting these requirements and giving the agency the opportunity to act may a complainant file suit in a court of law.
Florida Wildlife Federation, 390 So.2d at 66. See also Wetzel v. A. Duda & Sons, 306 So.2d 533 (Fla. 4th DCA 1975); Furnans v. Santa Rosa Island Authority, 315 So.2d 481 (Fla. 1st DCA 1975).
In this case, which is one of first impression, Friends seek to invoke section 403.412(2) to compel the Department to carry out its enforcement duties under Chapter 380. See Section 380.032(1), Florida Statutes (1981), which provides the Department with the "power and duty" to "[e]xercise general supervision of the administration and enforcement" of Chapter 380 (e.s.). Specifically, Friends sought first to compel the Department to institute an appeal pursuant to section 380.07(2), and second to commence enforcement proceedings pursuant to Section 380.11, Florida Statutes (1981).[6] The general rule is that such relief is not available to Friends or to any other citizens:
It is well settled that a court of equity will not ordinarily substitute its judgment for that of an administrative board when acting within the scope of its authority as defined by law, neither will it move to restrain a presumptive breach of duty, a suspicion that an administrative Board will act illegally or will not follow the law. Its power will not be called into action when the right invaded is slight, technical or not substantial, where the injury may be easily compensated in damages or where the threatened injury to the one complaining would be slight in comparison to that about to be imposed on the public, or where fraud, malice, bad faith or bad motives are not shown.
State Road Department v. Newhall Drainage District, 54 So.2d 48, 50 (Fla. 1951) (e.s.). See also Hathaway v. Munroe, 97 Fla. 28, 119 So. 149 (1929); Senior Citizens Protective League, Inc. v. McNayr, 132 So.2d 237 (Fla. 3d DCA 1961). Accordingly, courts will not generally "determine *914 whether or not the action of public officers is wise, economical or advantageous, such questions belonging exclusively to the public officers and boards." Broward County Rubbish Contractors Association v. Broward County, 112 So.2d 898, 903 (Fla. 2d DCA 1959). See generally 29 Fla.Jur.2d, Injunctions § 50 at 701 (1981).
This rule, however, is not without exception.[7]See State Road Department, 54 So.2d at 50. Moreover, it has been recognized that
[w]hile administrative agencies are given broad latitude in the performance of their duties, we cannot accept a contention that their decisions in the exercise of quasi-judicial function are beyond the reach of the judicial process, regardless of how arbitrary or unreasonable they might be.
Tropical Park, Inc. v. Ratliff, 97 So.2d 169, 170 (Fla. 1957). Florida decisions have thus acknowledged a constitutional right to judicial review of administrative action,[8] even in the absence of a right being provided by statute, where it is alleged and proven that the challenged administrative action involves "illegality or a palpable abuse of authority amounting to illegality", Hathaway, 119 So. at 150, the arbitrary or clearly erroneous exercise of authority, State v. Rose, 122 Fla. 227, 165 So. 60, 62 (1935), "fraud, corruption, [or] gross abuse of discretion", Senior Citizens Protective League, 132 So.2d at 239, or other "arbitrary or unlawful conduct." State v. Lee, 157 Fla. 62, 24 So.2d 798, 801 (Fla. 1946). See generally 1 Fla.Jur.2d Administrative Law §§ 142, 154 (1977). We consider that section 403.412(2)(a), in authorizing a suit for injunctive relief against any governmental agency to compel it to enforce laws relating to the protection of the natural resources of the state, and to enjoin any person from violating such laws, at the very minimum accords a statutory right to all citizens of this state to enjoin patent violations of those laws, or such palpable abuse of authority which may be said to be commensurate with illegality.
Although Friends' amended complaint fails to allege facts which might bring this case within the exception to the general rule that actions of an administrative agency are ordinarily not to be interfered with by the courts of this state, it does allege collusive actions by the Department, SFRPC, Monroe County and the developer of Port Bougainville that were designed to avoid the necessity of an extensive public review of changes in the development plans for that community.[9] If allowed *915 to amend their complaint, Friends may yet be able to allege facts which present a factual issue as to whether the Department's actions and decisions relating to Port Bougainville were so arbitrary and capricious that they amounted to a palpable abuse of discretion. It is a well settled rule that if the facts in a complaint appear amenable to amendment, a dismissal without leave to amend may result in an abuse of discretion. See Townsend v. Ward, 429 So.2d 404, 406 (Fla. 1st DCA 1983).
Accordingly, we conclude that the trial court erred in dismissing the amended complaint with prejudice. In so holding, we do not attempt to suggest the ultimate success or failure of Friends' action. We simply do not find the amended complaint so fatally deficient as to warrant dismissal with prejudice.
The final administrative order entered in Case AS-156 is AFFIRMED; the order dismissing Friends' initial complaint in Case AS-423 is AFFIRMED, and the final order of dismissal with prejudice entered in Case AS-423 is REVERSED and that cause is REMANDED for further proceedings not inconsistent with this opinion.
NIMMONS and ZEHMER, JJ., concur.
NOTES
[1] The "agreement" outlined steps to be taken by the developer, SFRPC, Monroe County and the Department so that expeditious review of changes made in the original development order could be had. The basis of the agreement was that all parties would strive for development of a plan which would not amount to a substantial deviation from the original plan for development of Port Bougainville. If such a plan could be devised, a resolution and proposed amended development order would be prepared and circulated for review. The county, which was responsible for properly scheduling and noticing public hearings on the issue, would then consider and act upon proposals submitted to it. If the county adopted those proposals, copies of the amended development order were to be furnished to SFRPC and the Department for further review. Finally, if the final plan approved by the county did not differ significantly from draft plans tentatively approved by those agencies, then they would agree not to appeal the amended development order to FLWAC. Our research indicates that such agreements are not new to the DRI process which has been said to encourage such compromise and informal settlement of issues:

Negotiations begin long before an application for development approval is filed, and the developer may make early changes to facilitate favorable action on the application. Additional changes may be suggested at each level.
Finnell, Coastal Land Management in Florida, 1980 Am.B.Found. Research J. 303, 381. See also Pelham, DRI Agreements: A New Technique for Implementing Chapter 380, 56 Fla.Bar.J. 51 (1982).
[2] Although the Department denied those petitions without hearing, SFRPC granted Friends' request for a full administrative hearing on issues pertaining to the propriety of tentative agreements reached by the parties in August, as well as the public's alleged exclusion from the initial stages of the DRI review process. A final order, denying Friends' requested relief on grounds of lack of standing as well as on the merits, was entered. An appeal of that order was then taken to the Third District Court of Appeal, which court eventually dismissed the appeal as moot. See Friends of the Everglades, Inc. v. South Florida Regional Planning Council, 447 So.2d 902 (Fla. 3d DCA 1984).
[3] Section 380.07(2) provides:

Whenever any local government issues any development order in any area of critical state concern, or in regard to any development of regional impact, copies of such orders as prescribed by rule by the state land planning agency shall be transmitted to the state land planning agency, the regional planning agency, and the owner or developer of the property affected by such order. Within 45 days after the order is rendered, the owner, the developer, an appropriate regional planning agency by vote at a regularly scheduled meeting, or the state land planning agency may appeal the order to the Florida Land and Water Adjudicatory Commission by filing a notice of appeal with the commission. The appellant shall furnish a copy of the notice of appeal to the opposing party, as the case may be, and to the local government which issued the order. The filing of the notice of appeal shall stay the effectiveness of the order and shall stay any judicial proceedings in relation to the development order, until after the completion of the appeal process.
(e.s.)
[4] The statute has in fact been cited as authority for "intervention and participation in the DRI hearing of a local government having jurisdiction over a proposed DRI", see Environmental Regulation, supra at 20.38.
[5] Section 403.412(2) provides, in part:

(2)(a) The Department of Legal Affairs, any political subdivision or municipality of the state, or a citizen of the state may maintain an action for injunctive relief against:
1. Any governmental agency or authority charged by law with the duty of enforcing laws, rules, and regulations for the protection of the air, water, and other natural resources of the state to compel such governmental authority to enforce such laws, rules, and regulations;
2. Any person, natural or corporate, governmental agency or authority to enjoin such persons, agencies, or authorities from violating any laws, rules or regulations for the protection of the air, water, and other natural resources of the state.
(b) In any suit under paragraph (2), the Department of Legal Affairs may intervene to represent the interests of the state.
(c) As a condition precedent to the institution of an action pursuant to paragraph (a), the complaining party shall first file with the governmental agencies or authorities charged by law with the duty of regulating or prohibiting the act or conduct complained of a verified complaint setting forth the facts upon which the complaint is based and the manner in which the complaining party is affected. Upon receipt of a complaint, the governmental agency or authority shall forthwith transmit, by registered or certified mail, a copy of such complaint to those parties charged with violating the laws, rules, and regulations for the protection of the air, water and other natural resources of the state. The agency receiving such complaint shall have 30 days after the receipt thereof within which to take appropriate action. If such action is not taken within the time prescribed, the complaining party may institute the judicial proceedings authorized in paragraph (a). However, failure to comply with this subsection shall not bar an action for a temporary restraining order to prevent immediate and irreparable harm from the conduct or activity complained of.
[6] Section 380.11, Florida Statutes (1981), provided:

Enforcement.  The Department of Veteran and Community Affairs, all state attorneys and all counties and municipalities are hereby authorized to bring an action for injunctive relief, both temporary and permanent, against any person or developer found to be in violation of the provisions of this act, or any rules, regulations, or order issued thereunder.
We note that the 1983 legislature expanded the enforcement powers of the Department to include administrative as well as judicial remedies for violation of the provisions of Chapter 380. See Chapter 83-308, § 5, Laws of Florida.
[7] In most cases coming within this exception, the rule is that the complaining party must plead and prove "special damages peculiar to himself and differing in kind rather than in degree from the damages suffered by the people as a whole." Boucher v. Novotny, 102 So.2d 132, 135 (Fla. 1958). Section 403.412 has, of course, abrogated the "special injury" rule in cases such as this where the enforcement or violation of "laws, rules, and regulations for the protection of the air, water, and other natural resources" is concerned, section 403.412(2)(a)1. and 2., and where the statutory conditions precedent set out in that section are met. Florida Wildlife Federation, 390 So.2d at 66.
[8] Where no specific statutory review is provided, it has been recognized that relief may be sought through various common-law methods including the common-law writs of certiorari, mandamus, prohibition, injunction or declaratory judgment, assuming the complainant is able to satisfy the requisites for such remedies. See generally 1 Fla.Jur.2d Administrative Law § 154 at 765-767 (1977). The right to seek such relief is said to be constitutional in nature and to derive from Florida's constitutional guarantee of access to courts. See Art. I, § 21, Fla. Const.; Getzen v. Sumter County, 89 Fla. 45, 103 So. 104, 106 (1925).
[9] For example, paragraphs 21-30 of Friends' amended complaint allege the following:

21. The Department did not appeal the illegal development order, even though it made numerous statements during the appeal period which suggested that an appeal would be forthcoming.
22. The Department has the power and the duty to exercise enforcement of "The Florida Environmental Land and Water Management Act of 1972", as amended (Chapter 380, Florida Statutes).
23. The Department stated in its August 2, 1982 complaint, "[The 1981 plat and PUD plan] DO constitute a substantial deviation from the previously Amended Development Order, plat and Development Plans (1980)...". emphasis in original.
24. On December 6, 1982, Fritz E. Scharenberg, the beneficial owner of the property on which Port Bougainville and Garden Cove are proposed to be constructed, stated that the 1981 plan and the 1982 plan are the same.
25. The interrelated Garden Cove portion of the development is found by the Amended Development Order to be a substantial deviation.
26. The Department failed to appeal the finding by the Board of County Commissioners of Monroe County that Port Bougainville's 1982 plan is not a substantial deviation, in spite of its August 2, 1982 position that the same (according to Mr. Scharenberg) plan-called "1981 plan"  was a substantial deviation.
27. Section 380.06(17)(a), Florida Statutes, provides, in part, "if the proposed changes are found to be a substantial deviation, the development shall be subject to further review pursuant to this section."
28. The Department has agreed with this statutory provision, as indicated in Paragraph 8 of its August 2, 1982 complaint: "If a substantial deviation is found, the developer must undergo further review through another application." emphasis added.
29. The Department has a statutory duty to prevent the developer from proceeding with a plan for development until "further review" of the development is completed under Section 380.06, Florida Statutes.
30. The Department has the duty and statutory authority under Section 380.11, Florida Statutes, to enjoin the developer from proceeding under the illegal 1982 Amended Development Order.