622 So.2d 520 (1993)
CONCERNED CITIZENS OF PUTNAM COUNTY FOR RESPONSIVE GOVERNMENT, INC., et al., Appellants,
v.
ST. JOHNS RIVER WATER MANAGEMENT DISTRICT, et al., Appellees.
No. 92-2095.
District Court of Appeal of Florida, Fifth District.
July 23, 1993.
David G. Guest and Kenneth B. Wright of Sierra Club Legal Defense Fund, Tallahassee, for appellants.
*521 Wayne E. Flowers, General Counsel, St. Johns River Water Management Dist., Palatka, for appellee St. Johns River Water Management Dist.
No appearance for appellees Duane L. Bork, Howard M. Sheridan, and Brenda B. Sheridan.
PETERSON, Judge.
Concerned Citizens of Putnam County for Responsive Government, Inc. and Citizens for Water, Inc. (collectively Citizens) appeal the trial court's dismissal with prejudice of Citizens' complaint for injunctive relief against the St. Johns River Water Management District (District). The complaint requested that the District be required (1) to establish minimum water flows and levels; (2) to cease, until the flows and levels are established, issuance of consumptive water permits within certain areas of the District which have critical water shortage problems; and (3) to reduce the volume of water consumption in the critical areas until the water resources and ecology can recover. Citizens alleged that, because of the District's failure to establish and maintain minimum water flows and levels, it has allowed excessive water withdrawal. The excessive water withdrawal, Citizens alleged, has damaged water resources and ecology, has caused certain lakes to dry up, and has caused the flow rates of certain natural springs to diminish dramatically. We vacate the order of dismissal and remand for further proceedings.
In 1972 the legislature enacted Chapter 373, Florida Statutes, the "Florida Water Resources Act of 1972" (the Act). Section 373.013, Fla. Stat. (Supp. 1972). The dual purpose of the Act was to provide for conservation of the available water resources while maximizing beneficial use. City of St. Petersburg v. Southwest Water Management District, 355 So.2d 796, 798 (Fla. 2d DCA 1977), appeal dismissed, 358 So.2d 129 (Fla. 1978), cert. denied, 368 So.2d 1364 (Fla. 1979). The Department of Natural Resources and later the Department of Environmental Regulation (DER) was made responsible for administration of Chapter 373 on a statewide basis. Section 373.026, Fla. Stat. (1972 Supp.); § 373.026, Fla. Stat. (1975). Section 373.069 created the five water management districts of the state, including appellee. The legislature has stated its policy to be that, "to the greatest extent possible," the DER delegate its power to the governing boards of the water management districts. Section 373.016(3), Fla. Stat. By rule 17-101.040(12)(a)3, the department has authorized the District to administer and enforce certain laws and rules, including section 373.042.
Citizens has standing to maintain the action against the District pursuant to section 403.412(2), Florida Statutes:
(a) The Department of Legal Affairs, any political subdivision or municipality of the state, or a citizen of the state may maintain an action for injunctive relief against:
1. Any governmental agency or authority charged by law with the duty of enforcing laws, rules, and regulations for the protection of the air, water, and other natural resources of the state to compel such governmental authority to enforce such laws, rules, and regulations;
2. Any person, natural or corporate, or governmental agency or authority to enjoin such persons, agencies, or authorities from violating any law, rules, or regulations for the protection of the air, water, and other natural resources of the state.
The purpose of this statute was discussed in Friends of the Everglades, Inc. v. Board of County Com'rs of Monroe County, 456 So.2d 904 (Fla. 1st DCA 1984), review denied sub nom. Upper Keys Citizens Ass'n v. Board of County Com'rs of Monroe County, 462 So.2d 1108 (Fla. 1985):
Section 403.412, Florida Statutes (1971), Florida's Environmental Protection Act, was enacted as a means of carrying out Florida's constitutional mandate to abate air and water pollution within this state. Florida Wildlife Federation v. State, Department of Environmental Regulation, 390 So.2d 64, 66 *522 (Fla. 1980). See also Art. 11, § 7, Fla. Const. The act has been described as reflecting "a legislative purpose to provide a procedure where governmental bodies could be compelled to enforce applicable environmental laws and individuals, corporations and governmental bodies could be restrained from violating any of the applicable environmental laws." Orange County Audubon Society, Inc. v. Hold, 276 So.2d 542, 543 (Fla. 4th DCA 1973) (e.s. in original). Accordingly, it has been said to have "created a new cause of action, giving the citizens of Florida new substantive rights not previously possessed" and to enable those citizens to institute suit for the protection of their environment without a showing of "special injury" as previously required. Florida Wildlife Federation, 390 So.2d at 66-67.
Id. at 912-13.
The portion of the Act which requires establishment of minimum flows and levels, and which, Citizens contends, the District has ignored for twenty years, is found in section 373.042, Florida Statutes:
Minimum flows and levels.  Within each section, or the water management district as a whole, the department or the governing board shall establish the following:
(1) Minimum flow for all surface watercourses in the area. The minimum flow for a given watercourse shall be the limit at which further withdrawals would be significantly harmful to the water resources or ecology of the area.
(2) Minimum water level. The minimum water level shall be the level of ground water in an aquifer and the level of surface water at which further withdrawals would be significantly harmful to the water resources of the area.
The minimum flow and minimum water level shall be calculated by the department and the governing board using the best information available. When appropriate, minimum flows and levels may be calculated to reflect seasonal variations. The department and the governing board shall also consider, and at their discretion may provide for, the protection of nonconsumptive uses in the establishment of minimum flows and levels.
It is undisputed that the District has not set minimum flows and levels for waters in the District except for the Wekiva River and Black Water Creek areas. See Fla. Admin. Code R. 40C-8.031. The District has, however, recognized the importance of minimum flows and levels in rules it has promulgated. For example, Florida Administrative Code Rule 40C-301 provides:
(5)(a) A proposed consumptive use does not meet the criteria for the issuance of a permit ... if such proposed water use will:
* * * * * *
5. cause the rate of flow of a surface water course to be lowered below a minimum flow which has been established pursuant to Section 373.042(1), [Florida Statutes] ...; or
6. cause the level of a water table aquifer, the potentiometric surface level of an aquifer source, or the water level of a surface water source to be lowered below a minimum level which has been established pursuant to Section 373.042(2), [Florida Statutes]... .
Citizens' argument is simply stated: In section 373.042, the Florida Legislature issued a 1972 mandate that water districts "shall" establish minimum flows and levels in water courses, surface waters, and aquifers and the District failed to do so. In response, the District argues that, notwithstanding the word "shall," the statute does not require the District to establish minimum flows and levels.

District Arguments

Directory vs. Mandatory
First, the District argues that the word "shall" in section 373.042 is not mandatory but directory and that it is within its discretion whether to establish minimum flows and levels. It concludes that, since the legislature did not set a deadline for the establishment of the minimum levels, as it *523 has done in other statutes,[1] the term "shall" was meant to be discretionary. We disagree.
Although there is no fixed construction of the word "shall," it is normally meant to be mandatory in nature. S.R. v. State, 346 So.2d 1018 (Fla. 1977), citing Neal v. Bryant, 149 So.2d 529 (Fla. 1962). The interpretation of the word "shall" depends upon the context in which it is found and upon the intent of the legislature as expressed in the statute. State v. Goodson, 403 So.2d 1337, 1339 (Fla. 1981); S.R., 346 So.2d at 1019, citing White v. Means, 280 So.2d 20 (Fla. 1st DCA 1973). Where a property right, rather than an "immaterial matter," or a matter of "substance" rather than a "matter of convenience" is involved, the word "shall" will be strictly construed. Neal, 149 So.2d at 532.
In the instant case, we begin our analysis with the premise that "shall" is mandatory, the "normal meaning." S.R. v. State, 346 So.2d 1018. Next, we employ the "legislative-intent" analysis described in S.R. and find nothing in Chapter 373 that persuades us that "shall" is intended to be other than mandatory. The legislature has employed three different words  "shall," "may," and "is authorized"  as introductory words in Chapter 373 to instruct the agencies to exercise the duties given to them. Review of the body of the sections following these introductory words does not reveal to us a pattern that would allow us logically to conclude that the word "shall" is directory and we note that, unless at least some of the subsections using the word "shall" are mandatory, the water management districts created by the legislature in section 373.069 would operate in a wholly discretionary fashion. Surely, such a result was not intended.
Finally, we analyze section 373.042 to determine whether it deprives anyone of property or property rights and whether an "immaterial matter" is involved. While the statute does not affect property directly, it may do so indirectly. Section 373.175 allows a district to place water use restrictions upon ground or surface water when insufficiency or serious harm is threatened. Section 373.216 requires a district to implement a plan for the issuance of permits for consumptive use no later than October 31, 1983. The District plans are set forth in the Florida Administrative Code, Title 40C. These regulations make references to minimum flows and levels established pursuant to section 373.042 and require minimum flows and levels to be considered when granting permits or when imposing water restrictions that limit the amount of water that may be withdrawn by a private property owner. See, e.g., Fla. Admin. Code Rules 40C-2.301(5)(a)5 and 6; 40C-4.301(1)(a)4; 40C-21.271(3)(c). It does not require an engineer to grasp the importance of section 373.042. The establishment of minimum water levels and flows allows the monitoring of Florida's water supply for the purpose of determining when emergency restrictions on water usage must be activated or when supply will no longer meet increasing demands. Because section 373.042 can substantially affect property rights, and because the statute does not involve an "immaterial matter," Neal does not support a construction of the statute as directory.
We interpret the lack of a deadline as a requirement that the District act within a reasonable time. See State, Bd. of Trustees of Internal Imp. Trust Fund v. Lost Tree Village Corp., 600 So.2d 1240 (Fla. 1st DCA 1992) (statute which did not impose specific timetable for action by board implicitly required action within reasonable time). Citizens should have the opportunity to present its case and, while it is difficult for a layperson to imagine how the water supply can be managed without the establishment of minimums, the District should have the opportunity to answer. The proceedings in the trial court have not reached that point since Citizens' complaint was dismissed with prejudice. *524 We hold that Citizens' complaint was sufficient to require a response by the District addressing the substantive issue presented by the complaint.
We note the argument made by the District that it has substantially complied with the requirements of section 373.042 by promulgating narrative criteria in its consumptive use permitting rules and water shortage rules. This argument may or may not be sufficient to defeat Citizens' action but it cannot sustain a motion to dismiss. In ruling on a motion to dismiss for failure to state a cause of action pursuant to rule 1.140(b), Florida Rules of Civil Procedure, the court must confine itself strictly to the allegations within the four corners of the complaint. Pizzi v. Central Bank and Trust Co., 250 So.2d 895, 897 (Fla. 1971). We hold only that the complaint is sufficient to withstand an attack by a motion to dismiss for failure to state a cause of action.

2. Court Interference With District's Administration
The district's second argument is that it is irrelevant whether "shall" is mandatory because a court may not interfere with the District's administration unless the District has committed a patent violation of the law or engaged in a palpable abuse of authority which may be said to be commensurate with illegality. It argues that, even if the twenty-year-old statute is mandatory, the lower court properly dismissed the complaint because there was no "patent violation of the law" in the District's failure to establish minimum flows and levels. It states that it has adopted regulations to protect surface and subsurface waters and, while it has not established minimums, it has not refused to set them.
The District cites Friends of the Everglades, Inc. v. Board of County Com'rs of Monroe County, 456 So.2d 904 for the concept that a court may not require a government agency to enforce laws absent a showing of a "patent violation of the law." The District equates a patent violation with a violation rising to the level of a conscious, willful motive designed to cause harm to Citizens. It points out that a common thread among Friends of the Everglades and the cases it cited[2] is that there must be an element of illegality in the action taken by the government agency. We distinguish those cases in that they involved actions that were at least facially within the discretion of the government agencies. The instant case does not involve discretionary actions; it involves a mandate of the legislature which created the District.
The District also argues that Part II of Chapter 373 of the Florida Statutes precludes the grant of an injunction that would prevent it from issuing additional consumptive use permits within the District until it has established the minimums required by section 373.042. Subsections (2) and (3) of section 373.217 provide:
(2) It is the further intent of the Legislature that Part II of the Florida Water Resources Act of 1972, as amended, as set forth in ss. 373.203-373.249, shall provide the exclusive authority for requiring permits for the consumptive use of water and for authorizing transportation thereof pursuant to s. 373.223(2).
(3) If any provision of Part II of the Florida Water Resources Act of 1972, as amended, as set forth in ss. 373.203-373.249, is in conflict with any other provision, limitation, or restriction which is now in effect under any law or ordinance of this state or any political subdivision or municipality, or any rule or regulation promulgated thereunder, Part II shall govern and control, and such other law or ordinance or rule or regulation promulgated thereunder shall be deemed superseded for the purpose of regulating the consumptive use of water. However, this section shall not be construed to supersede the provisions of the Florida Electrical Power Plant Siting Act.
*525 The District's argument is that, pursuant to subsection (3), Part II supersedes the requirement of section 373.042, which is contained in Part I. Therefore, the district argues, section 373.042 has no applicability to the grant of consumptive use permits. We disagree. First, the District does not specifically set forth, nor have we found, a conflict between the provisions of section 373.042 and Part II of Chapter 373. Second, the District ignores the requirements of its own regulations governing the issuance of a permit for consumptive uses of water. As noted above, rule 40C-2.301 provides that a proposed consumptive use does not meet the criteria for issuance of a permit if the proposed use will cause a level or flow to be lowered below the established minimum level or flow.
For the foregoing reasons, we vacate the order of dismissal and remand for consideration of the merits of Citizens' complaint.
VACATED; REMANDED.
GOSHORN and THOMPSON, JJ., concur.
NOTES
[1] District cites §§ 373.026(2)(a), .0391(2), .207, .216,.246, .414, .415(3), .416(3), .4592(6)(a), .4595(1), Florida Statutes, as examples.
[2] State Road Dept. v. Newhall Drainage Dist., 54 So.2d 48 (Fla. 1951); Hathaway v. Munroe, 97 Fla. 28, 119 So. 149 (1929); Senior Citizens Protective League, Inc. v. McNayr, 132 So.2d 237 (Fla. 3d DCA 1961).