GEORGE T. CHAMBERLAIN, APPELLANT, VS. THE CITY OF TAMPA, A MUNICIPAL CORPORATION, AND JOHN S. McFALL, AS TREASURER OF SAID CITY OF TAMPA, APPELLEES.

1. Courts of equity have jurisdiction to restrain municipal corporations and their officers from making unauthorized appropriations, or otherwise illegally or wrongfully disposing of the corporate funds, to the injury of property holders and tax-payers in the corporation, and a bill for this purpose is properly brought by an individual tax-payer on behalf of himself and other tax-payers in the municipality.

2. Funds derived from a tax levied by the City of Tampa, "to meet the accruing interest on any bonds which said city shall have heretofore issued, or shall hereafter issue, in accordance with law," under authority of section 7, Chapter 4086, acts of 1891, are in their nature special, and so long as the city has outstanding bonds upon which interest falls due at stated intervals, the city has no power to divert any part of such funds to other purposes than the payment of such interest; and section 10, Chapter 3951, acts of 1889, gives the city council no power to transfer any part of this special fund to the general fund, or to the waterworks and fire department funds of said city.

3. The city of Tampa had no power to transfer a surplus in a special fund, levied to meet accruing interest on outstanding bonds, to its general fire department and waterworks funds, where it had

already levied, collected and disbursed for these latter purposes the maximum amounts allowed by its charter for that year.

Appeal from the Circuit Court for Hillsborough County.

## Statement.

On July 9, 1894, the appellant in his own right and on behalf of all other tax-payers of the city of Tampa, filed his bill in equity against appellees, in the Circuit Court of Hillsborough County. The bill alleged that appellant was a resident, citizen and tax-payer of the city of Tampa, owning certain described real estate, besides other real and personal property of the value of $20,000, subject to taxation by said city, all of which had been duly assessed and taxed by said city for the year 1893; that said city had by its charter power to levy taxes as follows only, *viz*: Ten mills for general municipal purposes; five mills for waterworks and fire protection, and in addition a sufficient sum to meet accruing interest on any bonds issued by the city; that the city in 1889, issued bonds to the amount of $100,000, to run twenty years, all of which had been sold and were then unpaid; that said bonds drew interest at 7 per cent. per annum payable semi-annually; that in 1893 the city levied a tax upon all real and personal property therein, including the property of appellant; that said levy included ten mills for general municipal purposes, five mills for waterworks and fire protection, and a further tax of three mills to pay interest on aforesaid bonds; that the city is by its charter prohibited from making appropriations in any one year for a greater amount than it is allowed to collect by taxes, and no officer of the city can draw a warrant on the treasurer except in payment of an appropria-

tion; that the city had exhausted all the moneys collected by taxation for general municipal purposes, and there was then in the treasury only money to the credit of the interest fund, which money was levied and collected for the payment of interest under the power given the city to levy a tax to meet the accruing interest on the bonds above mentioned; that the money in the treasury could legally be used for no purpose other than in paying interest on said bonds, that McFall was the city's treasurer and by law was the legal custodian of all its moneys; that there was in the city treasury the sum of $2,300 to the credit of the interest fund, raised and collected as aforesaid; that the city having used all the money allowed by law to be collected for all other purposes save the interest fund, was threatening to use the money to the credit of the interest fund for general municipal purposes, fire protection and sanitation; that such use was illegal and unauthorized, and would work irreparable injury to appellant and other tax-payers of the city; that the city council had ordered McFall, its treasurer, to pay over to other funds of the city said sum of $2,300 from the interest fund to be drawn against by the council for other purposes than the payment of interest; that the interest fund was a trust fund; that at the time of its levy, and prior thereto, it had been appropriated by the Legislature to the payment of interest alone and that it could be used for no other purpose.

The bill prayed, among other things, that the city and McFall be enjoined and restrained from using the interest fund for any other purpose than the payment of interest on bonds of the city legally issued.

Upon the filing of this bill the court below directed the issuance a writ of injunction as prayed. On July 15, 1894, the city of Tampa filed its answer, admitting that appellant was a resident property holder and tax-payer

of the city, as alleged; that his property was duly assessed and taxed by the city for the year 1893; that the city by its charter had power to levy the taxes specified in the bill; that the city had issued bonds to the amount of $100,000 to run twenty years, which were all then outstanding and unpaid, drawing interest at 7 per cent per annum, payable semi-annually; that the city was prohibited from making appropriations in any one year for a greater amount than it was allowed to collect by taxation; that no officer could draw a warrant on the treasurer except in payment of an appropriation; that the city had exhausted all moneys collected by taxation for 1893 for general municipal purposes; that McFall was the city treasurer, and was by law constituted the legal custodian of all its money. Further answering, it was alleged that the city was chartered by act of the Legislature approved June 2, 1887; that in addition to the powers given to the city council in its charter the city was vested with all the powers prescribed by the general laws relating to municipal corporations; that by act of the Legislature approved May 31, 1889, entitled "An act to provide for the creation of a board of public works for the city of Tampa, Florida, and prescribing its powers and duties," it was provided, among other things, "That whenever the mayor, city council or board or public works find that there is a surplus in any of the special funds created by the tax levy or otherwise, the city council shall then have the power to carry the amount of said surplus into the general fund to be expended for the best interests of the city." It was further alleged that there was not at that time, and had not been since 189—, a board of public works in said city, that all the powers and duties prescribed by law for the board of public works were vested in and devolved upon the city council. Further, that at a special meeting of

the city council held August 25, 1893, a resolution was passed among other things as follows: "Resolved by the city council of the city of Tampa that for the purpose of securing an equal and uniform rate of taxation, and to pay the appropriation for the current expense of the city of Tampa for the fiscal year beginning July 1, 1893, and ending July 1, 1894, that there shall be levied for general municipal purposes a tax of ten mills on the dollar on all real and personal property in the city; that there shall also be levied an additional tax of three mills on the dollar on the real estate and personal property in the said city to meet the accruing interest on the bonded indebtedness of said city due respectively in December, 1889, and June, 1894, which additional tax shall be collected in cash; that there shall also be levied an additional tax of five mills on the dollar on the real estate and personal property in the said city for waterworks and fire proctection, which tax shall be collected in cash"; that the interest coupons due on the dates mentioned in said resolution had been paid and there was then in the hands of the city treasurer as a part of said interest fund, a surplus of $2,300, or thereabouts, left over after the payment of said interest coupons; that no more interest would be due until December 30, 1894; that provision would be made by the council to meet the interest then next due out of the taxes levied and collected for the fiscal year beginning July 1, 1894, and ending June 30, 1895, and that a sufficient amount of taxes would be collected in time to meet such interest coupons due December 30, 1894. It was further alleged that there was no money in the hands of the city treasurer, or at the disposal of the city council, to pay the running expenses of the different departments of the city government; that an ordinance had been duly passed and an election called thereunder for the issuance

and sale of $350,000 of additional bonds of said city, the election to be held July 14, 1894; that the council was absolutely without power àt that time to raise money for the payment of running expenses of the different departments of said city without making use of the surplus interest fund; that the city contained a population of over 15,000, a large proportion of which were natives of the island of Cuba, that there was a constant stream of travel between the city of Tampa and said island, and at that season of the year there was constant danger of importation into the city of yellow fever and other epidemics; that the city had no system of sewerage; that it was highly essential for the protection and preservation of the health of said city, as well as the State at large, that the city be kept in good sanitary condition; that to do so required the constant employment of a considerable body of laborers; that city scrip was very much depreciated, and the laborers employed in the sanitary department were threatening to quit work unless their wages were paid in money; that there was no money in the hands of the treasurer or at the disposal of the city council for the payment of the running expenses of the fire department; that at a special meeting of the council held June 29, 1894, a resolution was duly passed directing the city treasurer out of the surplus of $2,300, or thereabout, in his hands as aforesaid, to transfer to the sanitary fund, or pay to the person properly authorized to receive the same, the sum of $1,500 for the payment of the running expenses of the sanitary department, and to the fire protection fund or to the person duly authorized to receive the same $800 for the payment of the running expenses of the fire department of the city; that it was not only to the interest of the city that the council be permitted to make use of said surplus as proposed by said resolutions, but that it was absolutely nec-

essary for the protection of the lives and property of the citizens of said city, that such action be taken. It was further insisted by way of demurrer to the bill that the appellant and those he claimed to represent would not be injured by the action of the city council; that the council was vested by law with large discretionary powers over the finances of the city, and that appellant was not entitled to the relief prayed or any relief in a court of equity.

After filing this answer, appellees moved to dissolve the injunction previously granted, and upon the hearing it was admitted by the parties that the tax for general fund was collectible in city scrip; that there was more than enough scrip outstanding to pay the entire assessment ( for what year is not stated); that scrip was selling on the street at a discount of from 20 to — per cent.; that property could not be sold for taxes of 1894, before the first Monday in February, 1895; that interest was payable on December 31, 1894, to the amount of $3,500, and that taxes for 1894 could not be levied before the second meeting of the council in July, 1894. At the hearing the affidavit of appellant's solicitor was read, to the effect that the sanitation fund of the city of Tampa had warrants legally drawn against it and outstanding to the amount of $10,000; that there was an existing indebtedness against the sanitary appropriation, to which fund the amount due from the interest fund was to be credited, to the amount of $700; and further, that the city had operated its sanitary affairs up to the time of making the affidavit (July 12, 1894), with the exception of about $1,000 in money, entirely by the use of city scrip. On July 19, 1894, the court made an order dissolving the temporary injunction, and from this decree this appeal was taken to our January term, 1895.

*W. A. Carter*, for Appellant.

*No Appearance* for Appellees.

CARTER, J.:

I. Courts of equity have jurisdiction to restrain municipal corporations and their officers from making unauthorized appropriations, or otherwise illegally and wrongfully disposing of the corporate funds to the injury of property holders and tax-payers in the corporation, and a bill for this purpose is properly brought by an individual tax-payer on behalf of himself and other tax-payers in the municipality.   2 Dillon on Municipal Corporations, §§914-922; Cooley on Taxation, pp. 764-7; 10 Am. & Eng. Ency. of Law, 962; 1 Pomeroy Eq. Jur. §260.

II. Section 7, Chapter 4086, act of 1891, provides: "The city council of the said city of Tampa shall at their second meeting to be held in July, in each year, or as soon thereafter as may be practicable, ascertain and determine the amount of money to be raised by tax for general municipal purposes, which shall not be more than ten mills on the dollar on the real estate and personal property in the city of Tampa.  The city council may levy an additional tax of not more than five mills for waterworks and fire protection; and shall further levy an additional tax for a sufficient amount to meet the accruing interest on any bonds which the said city shall have heretofore issued, or shall hereafter issue, in accordance with the law." Under its authority the city of Tampa in 1893 levied taxes to its utmost limit for general municipal purposes, and for water works and fire protection, *viz*: ten mills for the former, and five for the latter; and, in addition, three mills for a special purpose,

Chamberlain v. City of Tampa—Opinion of Court.

*viz*: to meet accruing interest on bonds. The section quoted required the council to levy this additional tax, not at a definitely fixed rate, "but for a sufficient amount to meet the accruing interest on any bonds," &c. This levy was required for the specific purpose of meeting accruing interest on bonds, and so long as the city has outstanding bonds upon which interest falls due at stated intervals, the city has no power to divert the money raised by such levy to other purposes than the payment of such interest. Aside from this, to sanction the proposed action of the city council in the present case, would be to permit the city to do indirectly that which it is forbidden by its charter to do directly, that is, to collect by direct taxation more than fifteen mills for general municipal purposes, and for water works and fire protection. It had already levied and collected every dollar that it was authorized to collect during the fiscal year for these purposes, and it possessed no power to enforce any further contributions to those funds from its property holders by direct taxation. To permit it to transfer from another fund enforced for a special purpose, an amount for the benefit of those named would be indirectly authorizing the city to collect and appropriate taxes for general purposes and for water works and fire protection in excess of fifteen mills. The injury to taxpayers from such a course is obvious. With $2,300 to the credit of the interest fund, the tax for this fund for 1894 would have been greatly reduced from that of the previous year. The Legislature never intended that the special special levy for interest on bonds should be applied to general purposes, or for water works or fire protection. It never intended to permit taxes for those last named purposes, in excess of fifteen mills, to be levied under the guise of a special interest fund. It appears from appellees' answer that the authorized levy was en-

tirely insufficient to meet the expenditures of the city, and that vital interests of the city in matters of sanitation and fire protection were suffering for lack of necessary funds.   These critical periods will often occur in corporate as well as individual affairs wherever necessary expenditures exceed possible incomes, but they can furnish no excuse for a municipal corporation to divert its revenues from their legitimate purpose to another not authorized by law, however beneficial or meritorious.   The city council is invested with a large discretion in administering the city's financial affairs, but this discretion does not authorize them to divert taxes, set aside by its charter for a special purpose, to other purposes, so long as the special purpose exists, without legislative sanction.    State, ex rel. Barton, v. Hopkins, 12 Wash. 602, 41 Pac. Rep. 906.

The appellees, in the answer filed in the court below, insist that the $2,300 sought to be transferred to the santitation and the water works and fire department funds was a surplus in a special fund, contemplated by section 10, Chapter 3951, act of 1889, and for that reason properly transferable by the council.  The appellant's counsel contends that this act was repealed by Chapter 3950, act of 1889, and Chapter 4084, act of 1891.   The act referred to is quoted in full in City of Tampa v. Salomonson, 35 Fla. 446, 17 South. Rep. 581, and it was there held that neither of the acts referred to repealed it.   This act created a board of public works for the city of Tampa, with certain powers and duties, but it was given no authority whatever over any taxes levied for the interest fund, nor was it invested with any duties regarding any outstanding bonds, or interest due or to become due thereon. Its duties related principally to public improvements and by section 9 of the act it was required to submit to the council on or before a fixed

day in each year an itemized estimate of the amount of money necessary and advisable to spend in the execution of its duties for the ensuing year, giving estimates of expenditures, specifying for what department required, as streets, sewers, public buildings, water works, fire department, &c. The next section (10) is, in part, as follows: "It shall be the duty of the mayor and city council, in their annual levy of taxes, to make such levy as in their judgment shall be necessary and advisable for expenditures under the direction of the board of public works, and the amount so levied or raised from taxes, bonds or other sources, shall be collected and carried to the credit of the board of public works, and shall not be diverted from said board, or be used by the mayor and city council for any other purpose, but the same shall remain as a separate fund in the hands of the treasurer of the city * * * The board shall not divert the tax levy of the mayor and city council from the purposes or departments for which it was levied; provided, however, that whenever the mayor, city council and board of public works find that there is a surplus in any of the special funds created by the tax levy or otherwise, the city council shall then have the power to carry the amount of said surplus into the general fund, to be expended for the best interests of the city." A cursory reading of this section will show that it deals solely with those funds which are under the control of the board of public works, and which have been levied or especially set apart to this board, or some department under its control. It has no reference to the interest fund, because this fund was not to be under the control of this board. It does not, therefore, confer authority upon the city council to transfer a surplus in the special interest fund to the general fund, but only the

surplus of those special funds which are under the control of the board of public works.

The decree dissolving the injunction is reversed, and the cause remanded for further proceedings consistent with equity practice and this opinion.