P. O. RICKMAN, *Appellant,* v. L. W. WHITEHURST, W. G. WELLES, D. L. SKIPPER, JOHN HAGAN AND W. M. WHITTEN, AS THE BOARD OF COUNTY COMMISSIONERS OF DESOTO COUNTY, AND A. B. TUCKER, H. R. DREGGORS, AND C. M. CARRIER, BOND TRUSTEES OF PUNTA GORDA SPECIAL ROAD AND BRIDGE DISTRICT, APPELLEES.

Opinion Filed January 31, 1917.

1. A citizen and taxpayer of a county may maintain a bill in chancery against public officials of the county to restrain the unlawful expenditure of public funds, upon a showing made in such bill of peculiar injury to him which may result from such unlawful expenditure of such funds.

2. To entitle any one to relief against real or imaginary evils or injuries which are supposed to flow from unauthorized acts of public officials, he must bring his case under some acknowl-

edged head of equity jurisdiction and show what special injury he will sustain from such unauthorized acts distinct from that suffered by every other inhabitant.

Appeal from Circuit Court for Desoto County; F A. Whitney, Judge.

Order affirmed.

*Treadwell &Treadwell,* for Appellant;

*John W. Burton* and *J.' H. Hancock,* for Appellees.

ELLIS, J.—Under the provisions of Chapter 6208 Iaws of Florida, 1911, a Special Road and Bridge District was created in DeSoto County and called the Punta Gorda Special Road and Bridge District. After the special road district was created a special tax was levied to pay the interest upon and retire the bonds issued under the act and pursuant to the election. The bond issue amounted to $200,000.00. The money which was realized from the sale of the bonds was turned over to the Bond Trustees. The act under which the special road and bridge district was created and the bonds issued, requires the Board of County Commissioners to have prepared proper plans and specifications for the construction of the roads and bridges in the newly created special district, and after advertising the same as the law prescribes, to award the contract for such construction to the lowest responsible bidder.

The County Commissioners of DeSoto County, however, did not let a contract for the construction of the roads, but in 1915 the Bond Trustees filed with the County Commissioners a written request that the County

Commissioners purchase the necessary machinery and have the work of road construction in the special district done by labor hired by the day. This request was acted upon by the County Commissioners who proceeded with the work as requested by the trusteees, and refused to let the work out by contract to the lowest responsible bidder.

P. O. Rickman, the appellant, a citizen and tax payer of DeSoto county, and the owner of real estate situated in the Punta Gorda Special Road and Bridge District, as he alleges, filed his bill of complaint in the Circuit Court for·that county against the County Commissioners and the Bond Trustees of the Special Road and Bridge District, setting up the foregoing statement of facts, and praying for an injunction to restrain the Board of County Commissioners and Bond Trustees from using the monies derived from the sale of the bonds in constructing the roads and bridges in the special road district by day labor or otherwise, except under contract to be let to the lowest responsible bidder.

The County Commissioners and Bond Trustees answered the bill, justifying their conduct under the provisions of Chapter 7002, Laws of 1915, which is a special act entitled: "An Act to Empower the Board of County Commissioners of DeSoto County, Florida, to Make Changes in Roads and Manner of Improving Same in the Punta Gorda Special Road and Bridge District." This Special Act, approved May 29, 1915, has two sections, which are as follows:

"Section 1.    That the Board of County Commissioners of DeSoto County, Florida, be authorized to make such changes in the construction of the roads in the Punta Gorda Special Road and Bridge District as the Bond

Trustees of said District shall unanimously ask to be made, and that when both the Board of County Commissioners and the Bond Trustees are unanimously of opinion that the work can be done to the best advantage by day labor, the County Commissioners may direct that the work be done in that manner.

. "Sec. 2. This Act shall take effect and be in force from and after its passage and approval by the Governor."

The answer also averred that part of the work of construction had been let by contract; that they prepared proper plans and specifications for the construction of the roads, and diligently sought bids for the construction of roads and bridges, and that the bids received were considered to be excessively high, and were unsatisfactory and would have required the expenditure of a larger sum of money than that voted to be spent for such purpose in the district; that the policy of letting the work of construction out by day labor as suggested by the Bond Trustees could be done within the limit of the amount voted for the purpose and to the best advantage, and was unanimously agreed to by the County Commissioners and the Bond Trustees; that only about one-fourth of the money voted for that purpose has been expended, and that the work done by day labor had been done at a saving of about "thirty per cent. over contract prices proposed."

A demurrer was also interposed by the defendants to the bill, upon the ground that the complainant had shown no right to maintain the bill; that the Special Act, Chapter 7002 Laws of 1915, was not unconstitutional; that the bill showed no equity and no damage resulting from the acts of the defendants, and that complainant has no

vested right by virtue of the legislative acts, or any facts stated in the bill.

The cause came on to be heard upon the application for an injunction as prayed for in the bill. The demurrer was sustained, the injunction denied and leave to amend the bill as desired was granted. The complainant appealed from this order.

In the first place the complainant has the right to maintain the bill if the acts complained of were unauthorized and not within the powers of the Board of County Commissioners, and tended to produce a resultant injury to the complainant by increasing the burden of his taxes. The right of a citizen and taxpayer to maintain a suit to prevent the unlawful expenditure by public officials of public moneys unless otherwise provided by legislative enactment, is generally recognized. The nature of the powers exercised by County Commissioners who are vested by law with the power of levying taxes for county purposes and the expenditure of county funds, the danger of the abuse of such powers which are delegated to them by legislative enactment and the necessity for prompt action to prevent their flagrant abuse and irremedial injuries flowing therefrom would seem to fully justify courts of equity in interfering upon the application of a county taxpayer and citizen. See Crampton v. Zabriskie, 101 U.S. 601; 5 McQuillin's Municipal Corp., Sec 2575; 1 Joyce on Injunctions, Sec. 361; Peck v. Spencer, 26 Fla. 23, 7 South Rep. 642; Cotten v. County Commissioners of Leon County, 6 Fla. 610; Chamberlain v. City of Tampa, 40 Fla. 74, 23 South. Rep. 572; Crawford v. Gilchrist, 64 Fla. 41, 59 South. Rep. 963. The principle on which the right rests is that the taxpayer is necessarily affected and his burdens of taxation increased by any

unlawful act of the County Commissioners which may increase the burden to be borne by the taxpayers of the county, and no relief from such injury is obtainable elsewhere than in a court of equity.   The right of the complainant to maintain this suit therefore would seem to depend upon the peculiar injury which may result to him from the expenditure of the funds realized from the sale of the bonds in a manner other than by letting the contract for road construction to the lowest responsible bidder as Chapter 6208 Laws of 1911, requires.   The taxpayer's injury specially induced by the unlawful act is the basis of his equity, and unless it is alleged and proved, there can be no equitable relief.   His position is not contradistinguished from that of all other taxpayers, or citizens who are not taxpayers, and therefore cannot invoke the aid of equity merely to prevent an unlawful corporate act however much the act may shame his sense of pride in the faithful observance by public officials of the obligations of their public duties.

The bill in this case does not attack the validity of the bond issue, nor does it question the propriety of the expenditure of the funds in road and bridge construction within the special road district.   The right of complainant to maintain the bill is placed squarely upon the proposition that:   Whereas the general act of the legislature, Chapter 6208 Laws of 1911, under which the special road district was created and the bonds issued, required the work of road and bridge construction to be let out by contract to the lowest responsible bidders, the County Commissioners propose to and are actually constructing the roads and bridges by day labor.   There is no allegation of special injury to the complainant, nor that the cost of constructing the roads and bridges by the method proposed

will entail a greater cost than the method prescribed by the general act, nor that the money is being wasted or improvidently expended. What then gives the complainant his standing in equity? Is it the mere abstract conception that an act done by the county officials not in strict conformity of law *ipso facto* operates to injure a citizen of the county? If so then any citizen of the county, whether taxpayer or not, whether he resides in the special road district or beyond its limits, may maintain the action.

No authority has been submitted by appellant's counsel in support of his equity. We have upon investigation of the authorities, including text books and decisions from other jurisdictions, found no case in which such a suit has been maintained where it did not appear that special injury would result to the complainant as a taxpayer in the increased public burden as the result of the unauthorized act. The principle is universally recognized that to entitle a party to relief in equity he must bring his case under some acknowledged head of equity jurisdiction. In a case where a public official is about to commit an unlawful act, the public by its authorized public officers must institute the proceeding to prevent the wrongful act, unless a private person is threatened with or suffers some public or special damage to his individual interests, distinct from that of every other inhabitant, in which case he may maintain his bill. This seems to be the principle which should control this decision. See 2 Dillon's Munic. Corp. (4th ed.) Sec. 920. *et seq.*

The demurrer to the bill, we think, was correctly sus-

tained, and the order appealed from is, therefore, affirmed.

BROWNE, C. J., and TAYLOR, SHACKLEFORD and WHITFIELD, JJ., concur.