667 So.2d 942 (1996)
James B. CLAYTON, Appellant,
v.
SCHOOL BOARD OF VOLUSIA COUNTY, Appellee.
No. 95-643.
District Court of Appeal of Florida, Fifth District.
February 9, 1996.
Daniel R. Vaughen of Daniel R. Vaughen, P.A., and Philip L. Partridge, Deland, and Richard S. Graham, of Landis, Graham, French, Husfeld, Sherman & Ford, P.A., Daytona Beach, and Todd J. Sanders, Daytona Beach, for Appellant.
C. Allen Watts of Cobb, Cole & Bell, Daytona Beach, for Appellee.
HARRIS, Judge.
This case requires that we review the holding in North Broward Hospital District v. *943 Fornes, 476 So.2d 154 (Fla.1985), which substantially limited taxpayer standing in most litigation, to determine if James B. Clayton has standing to bring this action.
The undisputed facts are these: The School Board of Volusia County (Board) adopted a resolution authorizing an eminent domain action to acquire certain property in DeBary, Florida, owned by DeBary Estate Associates, Inc. Pursuant to this resolution and the authority granted by it, the Board filed its petition for eminent domain.
During the course of the action, however, it was decided to substantially change the description of the property to be acquired. And instead of permitting the issue of value to go to the jury, the value of the new parcel was determined by negotiated agreement. Even though the purchase price agreed to was in excess of $500,000, over twice the amount of the appraisals in the record, the Board voted to approve the purchase but only by a bare majority vote.
Clayton contends that the Board acted without lawful authority in that it failed to comply with section 235.054(1)(b), Florida Statutes, which requires:
Prior to acquisition of the property, the board shall [if the purchase price exceeds $500,000] obtain at least two appraisals by appraisers approved pursuant to s. 253.025. If the agreed purchase price exceeds the average appraised value, the board is required to approve the purchase by an extraordinary vote.
Although the Board asserts that this transaction is not subject to section 235.054(1)(b) because the purchase took place as part of an eminent domain action, we must consider the allegations of Clayton's complaint in order to determine standing. Only if we find standing should we proceed to the merits of the controversy.
The question before us, then, is whether a taxpayer who believes that a public board is wasting public money to the detriment of all the taxpayers by acting beyond its authority must sit back and watch the unauthorized action go forward or whether he, as one of the aggrieved taxpayers, may enforce the Board's adherence to its lawful authority through the courts via mandamus. In other words, did James B. Clayton have standing to challenge the action of the School Board of Volusia County when it proposed to settle an eminent domain action by agreeing to purchase property not described in the Order of Taking for more than the appraised value and in excess of $500,000 even though such action lacked the extraordinary vote required by the legislature?
Our first inquiry is whether Fornes precludes standing since Clayton admittedly is not economically impacted differently from any other taxpayer. This restriction truly creates a standing rule that is an anomaly: if everyone is injured, no one can sue. In announcing this rule as it applies to taxpayer actions, the majority in Fornes stated:
Since this court's decision in Henry L. Doherty & Co. v. Joachim, 146 Fla. 50, 200 So. 238 (1941), we have consistently held that a mere increase in taxes does not confer standing upon a taxpayer to challenge a governmental expenditure. In that case we stated:
Both parties seem to recognize the rule announced in Rickman v. Whitehurst, et al., 73 Fla. 152, 74 So. 205, that in the event an official threatens an unlawful act, the public by its representatives must institute the proceedings to prevent it, unless a private person can show a damage peculiar to his individual interests in which case equity will grant him succor.
In a strong dissent, Justice Ehrlich asserted that the Fornes' majority simply misread the precedent when it held that an illegal public action that raises the taxpayer obligation or wastes public money cannot constitute the necessary "injury" which authorizes a taxpayer suit. A careful reading of Chamberlain v. City of Tampa, 40 Fla. 74, 23 So. 572 (1898), Rickman and Joachim lends support to Justice Ehrlich's contention, and we respectfully request that the present court reconsider the Fornes decision.[1]
*944 In Chamberlain, the court was considering a challenge by a taxpayer that the City had acted improperly when it applied to the general fund surplus monies from an account committed to the reduction of bonds. In response to a challenge to the taxpayer's standing, the court held:
Courts of equity have jurisdiction to restrain municipal corporations and their officers from making unauthorized appropriations, or otherwise illegally and wrongfully disposing of the corporate funds, to the injury of property holders and taxpayers in the corporation, and a bill for this purpose is properly brought by an individual taxpayer on behalf of himself and other taxpayers in the municipality.
Chamberlain, 23 So. at 574. This principle was recognized in Rickman:
In the first place the complainant has the right to maintain the bill if the acts complained of were unauthorized and not within the powers of the board of county commissioners, and tended to produce a resulting injury to the complainant by increasing the burden of his taxes. The right of a citizen and taxpayer to maintain a suit to prevent the unlawful expenditure by public officials of public monies ... is generally recognized.
Rickman, 74 So. at 206.
In Rickman, the taxpayer challenged that the county had improperly acted to use public funds to construct roads and bridges by hiring day labor instead of contracting with the lowest and best bidder. But, as the court stated:
There is no allegation of special injury to the complainant, nor that the cost of constructing the roads and bridges by the method proposed will entail a greater cost than the method prescribed by the general act, nor that the money is being wasted or improvidently expended.... If [the taxpayer in Rickman could maintain the action], then any citizen of the county, whether taxpayer or not, whether he resides in the special road district or beyond its limits, may maintain the action.
Although Rickman requires a "special injury," it held that an allegation of an illegal expenditure of public funds which would either increase the tax burden or waste public money, would meet that requirement. What constitutes an actionable injury is made even clearer by Rickman's further comment:
[The taxpayer's] position is not contradistinguished from that of all other taxpayers, or citizens who are not taxpayers, and therefore cannot invoke the aid of equity merely to prevent an unlawful corporate act however much the act may shame his sense of pride in the faithful observance by public officials of the obligations of their public duties.
We believe that this language stands for the proposition that if a citizen/taxpayer cannot show that his or her tax burden will increase because of illegal action, he or she has no standing to sue public officials merely to force them to obey the law. For example, if a county commissioner routinely runs a stop sign or exceeds the speed limit, a taxpayer suffers no "injury" that would justify individual action. If the taxpayer wants to stop this type of illegal activity, he or she should contact law enforcement. However, if the county is required to pay the commissioner's fines out of the public treasury, an individual action would be appropriate.[2]
Joachim followed up on this theme. In Joachim, the taxpayer sued because the City voted to close a public walkway that ran along the shore between the Breakers and the ocean. The complainant urged that although the entire public was "injured," his injury was greater because the complainant, "their guests and tenants had but 600 feet to *945 walk for a swim before the act of the council in closing the pathway" but because of the City's improper action, such journey was now increased to "one-third of a mile and required passage through a congested traffic area."
The court found that although the complainant was injured, his injury did not differ in kind from that of "others in the same community, the neighbor next door or the man across the street."[3] But Joachim did not involve the illegal expenditure of public funds or the wasting of public money which would bring the case within the "general rule" recognized by Rickman.
Admittedly, however, the Fornes majority read Rickman to require some special injury other than increased taxes suffered by all taxpayers. The court adopted the following language from Department of Administration v. Horne, 269 So.2d. 659, 663 (Fla.1972):
Thus we find that where there is an attack upon constitutional grounds based directly upon the Legislature's taxing and spending power, there is standing to sue without the Rickman requirement of special injury, which will still obtain in other cases.
Therefore, if the supreme court elects not to reconsider the Fornes decision, then Clayton's standing depends on whether his claim comes within an exception to Fornes.
We believe that standing in this case meets a recognized exception to the Fornes' rule. Fornes itself recognized a "constitutional argument" exception. Certainly, the question of whether a public board can take an official action requiring the expenditure of public funds on less than its required vote has constitutional implications since it challenges the very heart of representative governmentwhether the servant must operate within his delegated authority.
In addition, the supreme court in Clayton v. Board of Regents, 635 So.2d 937 (Fla. 1994), engrafted an additional exceptiona "unique circumstances of the case" exception. We acknowledge and agree with the statement in the dissent that it is not clear exactly what the specific circumstances were in Regents that authorized standing. However, this is an issue that almost daily faces the trial court and regularly faces us. Since we assume that the new "unique circumstances of the case" rule on standing applies to all courts when dealing with a mandamus petition, it is our obligation to help shape the limits and better define such rule subject to supreme court review and correction. Therefore, based on an analysis of Regents, we should determine and explain the standard for this new exception. This is essential if we are to assist the trial court in determining the scope of the new rule.
The issue in Regents, insofar as we can tell from the Regents opinion, was whether a public body overseeing the state university system exceeded its authority when it appointed one of its own as president of one of the universities under its control. The challenge *946 to this authority was not based on a constitutional argument but rather on a common law principle that a governmental body may not appoint one of its own members to a position over which it has the power of appointment.
It appears, therefore, that the "unique circumstances" doctrine may apply when one challenges the very authority of the public board to take the contested action or, as in our case, contends that no action was lawfully taken by the board because it failed to obtain the necessary vote yet proceeded as though it had officially acted. Or it may well be that the supreme court was merely recognizing a position similar to the one announced by the New Mexico Supreme Court in State ex rel Clark v. Johnson, 120 N.M. 562, 904 P.2d 11, 18 (1995):
In the present proceedings, two of the Petitioners are state legislators, and all three are voters and taxpayers. However, as in Sego,[4] we need not consider whether those factors independently confer standing to bring this action because, as in Sego, the issues presented are of "great public interest and importance." Id. Petitioners assert in the present proceeding that the governor has exercised the state legislature's authority. Their assertion presents issues of constitutional and fundamental importance; in resolving those issues, we will contribute to this state's definition of itself as sovereign. "We simply elect to confer standing on the basis of the importance of the public issues involved." Id. More limited notions of standing are not acceptable.
We believe that the issue of whether a public board can take official action with less than the requisite vote is of sufficient public importance to warrant standing under the "unique circumstances" standard or under the constitutional question exception. But we certify the following questions to the supreme court as having great public importance:
DOES THE "UNIQUENESS OF THE PARTICULAR CASE" STANDARD PERMIT A TAXPAYER CHALLENGE TO THE ACTION OF A PUBLIC BOARD WHICH IS ALLEGED TO BE ACTING IN EXCESS OF ITS STATUTORY AUTHORITY AND WHICH ACTION EITHER INCREASES THE TAX BURDEN OR WASTES PUBLIC MONEY?
And in the alternative:
DOES THE ACTION OF A PUBLIC BOARD WHICH EITHER INCREASES TAXES OR WASTES PUBLIC MONEY RISE TO THE LEVEL OF A CONSTITUTIONAL ISSUE WHEN IT IS ASSERTED THAT THE PUBLIC BOARD EXCEEDED ITS AUTHORITY GRANTED BY THE LEGISLATURE?
Having determined that Clayton has standing, we now proceed to the issue on the merits. The Board contends that section 235.054 is simply inapplicable to this case since the purchase was a part of the process of eminent domain.
We agree that the extraordinary vote required by section 235.054 does not apply if the Board acquires property under the power of eminent domain. We disagree, however, that the Board can avoid the provisions of this section merely by filing an eminent domain action, after which it then proceeds to negotiate the purchase of the property. We are not suggesting that this was the intent of the Board when the eminent domain action was filed, merely that the filing of an eminent domain action alone does not change the Board's responsibilities in negotiated purchases.
We believe the legislature has given the Board two, and only two, alternative methods for obtaining real propertyeminent domain and negotiated purchase. If the eminent domain method is used, the value is established by twelve citizens. In this event, the Board's only action is the initial vote to proceed to eminent domain. The amount is totally in the hands of an impartial jury. However, the Board urges that, as with any litigation, it can "settle" even an eminent domain case by agreement. Certainly it can, but in doing so, the transaction becomes a negotiated purchase and not an eminent domain *947 taking. That is particularly true in this case because the property taken was not even described in the order of taking. If the value is established by agreement, we believe the proceedings fall under the requirements of section 235.054. This section provides that the Board can settle based on a bare majority vote if the agreed price does not exceed the average appraised value. If the purchase price does exceed the average appraisal, however, then an extraordinary vote is required. It was required in this case.
Nor do we accept the Board's position that it can "opt out" of section 235.054 simply by not invoking the exemptions from disclosure provided by section 235.054(1)(a). We believe that the provision of 235.054(1)(b) apply to any purchase of real property by the Board that is not accomplished by a jury verdict in an eminent domain action.
The court's order quashing the alternative writ of mandamus is reversed and the cause is remanded for further action consistent with this opinion.
REVERSED and REMANDED.
COBB, J., concurs.
ANTOON, J., dissents, with opinion.
ANTOON, Judge, dissenting with opinion.
While I respect the views expressed by the majority, I dissent.
James Clayton appeals the trial court's order denying his petition for writ of mandamus. The petition requested the trial court to issue an order directing the School Board of Volusia County (School Board) to rescind its vote to acquire real property described as "Site S," alleging that the vote was void because it was not made in accordance with the provisions of section 235.054, Florida Statutes (1993)[1]. The petition alleged that Clayton had standing to seek mandamus relief in the circuit court as a citizen of Volusia County "representing all persons in his situation as a voter and taxpayer." The trial court denied the petition, citing to North Broward Hospital District v. Fornes, 476 So.2d 154 (Fla.1985), ruling that Clayton lacked standing to obtain mandamus relief because his petition failed to allege either a constitutional challenge or a special injury. I conclude that the trial court was correct in so ruling, and therefore, I would affirm.
The holding in Fornes is clear"[a]bsent a constitutional challenge, a taxpayer must allege a special injury distinct from other taxpayers in the taxing district to bring suit." Fornes, 476 So.2d at 154. As I read Fornes, an allegation of either unconstitutionality or special injury is essential in a taxpayer suit, and without such an allegation a taxpayer lacks standing to institute a suit challenging allegedly illegal expenditures made by the government. Here, Clayton's petition for mandamus failed to assert either a constitutional challenge or an allegation that Clayton suffered a special injury. Accordingly, the trial court properly concluded that application of Fornes mandated denial of Clayton's petition. In agreeing with the trial court's conclusion, I reject Clayton's contention that the decision in Fornes is factually distinguishable and therefore not controlling.
In this regard, Clayton maintains that the ruling in Fornes does not apply to the instant case because, unlike the petitioner in Fornes who sought injunctive relief, in this case Clayton petitioned the trial court seeking mandamus relief. Clayton cites to Clayton v. Board of Regents, 635 So.2d 937 (Fla.1994) to support this argument. In Board of Regents, Clayton filed a petition for writ of mandamus challenging the authority of the Board of Regents to appoint Betty Castor as president of the University of South Florida. With regard to the question of whether Clayton had standing to institute the mandamus action, the supreme court simply stated that "under the unique circumstances of this case, we do find that Clayton has standing to bring the petition ..."
While it is unclear what the "unique circumstances" were in that case, I reject the majority's conclusion that the terse reference *948 was intended to create an exception to the holding in Fornes. I do this because the supreme court did not cite to Fornes and did not explain what was meant by the reference. Although the majority elevates this phrase to the status of a rule of law, in my view, it is at best obscure dictum. However, even if this language were intended to create such an exception to the law of standing, it would not apply in the instant case because there is nothing "unique" in either Clayton's status as a taxpayer or in Clayton's choice of mandamus as his vehicle for relief. Furthermore, I conclude that it is unlikely that, in so ruling, the supreme court intended to make the distinction Clayton urges us to make here; that is, that standing to challenge government action exists when a challenger seeks mandamus relief but not when injunctive relief is sought. If such a distinction were intended, the supreme court would have clearly said so.
In any event, the decision in Board of Regents is certainly distinguishable inasmuch as that case did not pertain to a taxpayer challenge concerning the expenditure of public money, but instead, involved a citizen's challenge to the appointment of a university president, and as a result, the Regents court did not even cite to or mention the ruling in Fornes in its discussion of the standing issue.
However, in an abundance of caution, I suggest that the following question be certified to the supreme court as one of great public importance:
DOES A VOTER OR TAXPAYER HAVE STANDING TO PURSUE MANDAMUS RELIEF WHEN CHALLENGING THE LEGALITY OF THE GOVERNMENT'S EXPENDITURE OF FUNDS?
In closing, I note that the policy considerations expressed by the court in Fornes apply to the facts of the instant case:
We recognize that all these standing rules are based on highly debatable policy choices, but they represent, in our view, a reasonable effort to guarantee that the state and counties lawfully exercise their taxing and spending authority without unduly hampering the normal operations of a representative democratic government. We adhere to these rules today because they are based on long-established precedent and seem both reasonable and fair.
Fornes, 476 So.2d at 155 (quoting Paul v. Blake, 376 So.2d 256 (Fla. 3d DCA 1979)). It is obvious from the persuasive dissent authored by Justice Ehrlich that the majority opinion in Fornes was controversial in the respect that the court's decision to limit public access to our courts affects not only those citizens who institute suit in an effort to frustrate the legitimate functions of state government but also to those citizens who are presumably well-intentioned. Nevertheless, Fornes is the controlling law in Florida and I maintain that the trial court was correct in enforcing it. While review of the instant record certainly raises concerns with regard to the legality of events leading up to the School Board's acquisition of the Site S property, I conclude that disposition of this appeal must turn on the fact that Clayton lacked standing to pursue the underlying action for mandamus.
NOTES
[1] Our analysis is not a criticism of the 1985 supreme court. We recognize the authority of the supreme court and our obligation to apply the law as directed by its decisions. We do not believe it inappropriate, however, after a reasonable period of time and after observing the effect of a particular decision on the litigants that come before us, to request that the supreme court review a decision that is so often challenged before our court. It is up to the supreme court to determine whether the request deserves consideration.
[2] The Board argues here that the protection of the public interest even in cases such as this is adequately left in the exclusive hands of the Attorney General and the State Attorney. This argument is refuted by the obvious fact that only Clayton has stepped forth to protect the public interest in this case.
[3] We confess some confusion by this holding. The Joachim court seems to acknowledge that the value of property in a coastal area depends on its "accessibility" to the beach. Indeed, the court recognized the disappointment of property owners "who having bought within easy walking distance to the sea awake suddenly to find that if they are to be lulled by the waves lapping the sands; charmed by the sunlight dancing upon the water; fascinated by myriads of minnows fleeing for their lives before the ruthless charge of a cavilla; or interested by a stately liner sailing for Miami, close in to avoid the Gulf Stream, they must go three times as far through a business district in a most roundabout way ... that there has been an injury we have no doubt; that it is greater in degree than that of many others in the community we believe; that it is different in kind we cannot agree." In recognizing that the value of an owner's property would be affected by the challenged government action, we have to wonder why the constitutional right to seek redress was not implicated. If Joachim considered the issue at all, the court must have believed that the injury suffered by the complainants by having to go a greater distance to the beach caused by the unauthorized acts of public officials did not come within the protection of the constitutional provision then in effect: "All courts of the state shall be open so that every person for any injury done him in his lands, goods, person or reputation shall have remedy." Section 4, Declaration of Rights, Constitution of the State of Florida (1885). However, now (and at the time of Fornes) a different standard applies: "The courts shall be open to every person for the redress of any injury." (Emphasis added). Article 1, Section 21, Constitution of the State of Florida (1968). By its terms at least, the constitution does not distinguish between direct and indirect, small and large, or special and universal injuries.
[4] State ex rel Sego v. Kirkpatrick, 86 N.M. 359, 524 P.2d 975 (1974).
[1] Section 235.054 of the Florida Statutes (1993) provides, among other things, that when a school board seeks to acquire by purchase any real property for educational purposes and the agreed purchase price exceeds the average appraised price of two appraisals, the school board must approve the purchase by an extraordinary vote.