696 So.2d 1215 (1997)
James B. CLAYTON, Appellant,
v.
SCHOOL BOARD OF VOLUSIA COUNTY, Appellee.
No. 95-643.
District Court of Appeal of Florida, Fifth District.
May 30, 1997.
Opinion Clarifying Decision July 25, 1997.
*1216 Daniel R. Vaughen of Daniel R. Vaughen, P.A., and Philip L. Partridge, Deland, and Richard S. Graham, of Landis, Graham, French, Husfeld, Sherman & Ford, P.A., Daytona Beach, and Todd J. Sanders, Daytona Beach, for Appellant.
C. Allen Watts of Cobb, Cole & Bell, Daytona Beach, for Appellee.

ON REMAND FROM THE SUPREME COURT
HARRIS, Judge.
Because the supreme court has reaffirmed its holding in Fornes[1] that a citizen taxpayer has no standing, individually or as a representative of a class, to challenge even the "illegal" acts of elected or appointed officials unless such illegality rises to constitutional proportions, and because Clayton's current complaint alleges only that the School Board members violated a state statute, we affirm the trial court's dismissal of the complaint but remand with instructions that Clayton be permitted, if he can, to allege a constitutional[2] basis for his challenge.
We recognize, as does Clayton, that absent a constitutional basis for a challenge, the Fornes standing rule, applied to cases of this type, creates a rare situation in which there is a wrong without a remedy. That is because even though the citizen taxpayer, who is also a voter, may "throw the rascals out" at the next election, even if such action exacts a measure of retribution it will not restore the looted treasury nor undo the illegally increased tax obligation. It is in this regard that our expansive limitation rule on taxpayer actions is unique. See Texfi Industries, Inc. v. City of Fayetteville, 44 N.C.App. 268, 261 S.E.2d 21, 23 (1979), rev. denied, 299 N.C. 741, 267 S.E.2d 671 (1980) ("Rule that a taxpayer has no standing to challenge question of general public interest that affects all taxpayers equally does not apply where taxpayer shows that tax levied upon him is for unconstitutional, illegal or unauthorized purpose"); William Penn Parking Garage, Inc. v. City of Pittsburgh, 464 Pa. 168, 346 A.2d 269, n. 21 (1975) ("[f]irst, a taxpayer is permitted to sue in order to prevent waste or illegal expenditure of public funds"); Byrd v. Independent School District No. 194, 495 N.W.2d 226, 231 (Minn.App.1993) ("ISD 194 asserts appellants Byrd and Hoiness lack standing because they are motivated more by private gain than public good. We disagree. As the trial court noted, both Byrd and Hoiness are taxpayers of ISD 194. Taxpayers have a real and definite interest in preventing an illegal expenditure of tax money"); Nebraska School District No. 148 v. Lincoln Airport Authority et. al., 220 Neb. 504, 371 N.W.2d 258, 261 (1985) ("[a]nother established principle, which is conceded by the defendant, is that a resident taxpayer may invoke the interposition of a court of equity to prevent the illegal disposition of money of a municipal corporation or the illegal creation of a debt which he, in common with other property holders, may otherwise be compelled to pay"); County of Sonoma et. al. v. State Board of Equalization, 195 Cal.App.3d 982, 241 Cal.Rptr. 215, 219 (1st Dist.1987) ("Plaintiff Whorton is a taxpayer, although not a taxpayer who is challenging an assessment of taxes against himself. His assertion of standing is premised on the theory that *1217 defendants are without authority to create a de facto exemption from Sonoma County's sales tax and have illegally expended funds by administering the sales tax law while recognizing such an improper exemption ... [P]laintiff Whorton is not challenging the exercise of the Board's legitimate discretion, but rather the extent of the Board's authority under section 6353. In the circumstances of the case, we hold that Whorton has standing to challenge the Board's interpretation and application of section 6353"); Beshear v. Ripling, 292 Ark. 79, 728 S.W.2d 170, 171 (1987) ("[h]e clearly had standing as a taxpayer to pursue the relief authorized by Ark. Const.art. 6, sec. 13, which provides: `[a]ny citizen of any county, city or town may institute suit on behalf of himself and all others interested, to protect the inhabitants thereof against the enforcement of any illegal exaction whatever.' It is self-executing, and it permits taxpayers to challenge the legality of expenditures of public funds"); Champ v. Poelker, 755 S.W.2d 383, 387 (Mo.App.E.D. 1988) ("[w]here no general revenue is involved in the issuance of bonds, `a taxpayer has no legitimate interest in connection with such bonds' [Citation omitted.] A loss of revenue from IDA coffers cannot increase the burden of public debt or taxation, and therefore, appellants have not suffered `a direct, pecuniary injury in the form of an increased tax burden'").[3]
Taxpayers such as Clayton, if they desire to prevent or reverse an illegal disposition of public funds, the illegal creation of a public debt or the illegal assessment of taxes, may wish to consider again amending their constitution in order to specifically include injuries caused by the misfeasance or malfeasance of public officials within the "any injury" provision presently appearing in Article I, section 21 of their constitution: "[t]he courts shall be open to every person for redress of any injury." Or they may prevail upon the Legislature to create such cause of action under its authority granted by the "Taxpayers' Bill of Rights" (Article I, section 25) which provides:
By general law the legislature shall prescribe and adopt a Taxpayers' Bill of Rights that, in clear and concise language, sets forth taxpayers' rights and responsibilities and government's responsibilities to deal fairly with taxpayers under the laws of this state.
DISMISSAL AFFIRMED but REMANDED for further action consistent with School Board of Volusia County v. Clayton, 691 So.2d 1066 (Fla.1997).
COBB, J., concurs.
ANTOON, J., concurs in result only.

*1218 ON MOTION FOR CLARIFICATION

HARRIS, Judge.
The School Board moves for clarification of our opinion on remand. It urges that, because the lower court did not adjudicate the merits of the cause, there has been no determination that an illegal action took place. That is, of course, true. But, the School Board suggests that by using the term "illegal action" in our opinion we may have indicated that we believe that the law was violated in the purchase of the property in the present case. We have not, and cannot, make that determination from the record before us.
We did hold in our initial opinion that the School Board cannot avoid the extraordinary vote requirement by merely commencing the acquisition through eminent domain and then converting to negotiation for the ultimate purchase. We did not determine that Clayton's allegations that the School Board actually paid an amount sufficient to invoke the requirement of the extraordinary vote were proved, only that the allegations before the trial court were sufficient to require the court to consider the issue. Since we were reversed by the supreme court on the standing issue, our original opinion in this regard becomes meaningless in any event.
Our reference to "illegal action" was unrelated to the specific facts of this case, but instead was in connection with our discussion about the supreme court's limitation of standing only as to unconstitutional, as opposed to illegal, actions of governmental officials and the resulting limited options of citizens confronted with officials who will not follow the law. Obviously, whether the School Board acted improperly in this case has not been determined and, quite possibly, will never be determined because of the standing limitation.
CLARIFICATION granted as set out above.
COBB and ANTOON, JJ., concur.
NOTES
[1] North Broward Hospital District v. Fornes, 476 So.2d 154 (Fla.1985).
[2] While we are not convinced that it is the type of "constitutional challenge" contemplated by the supreme court, we note that Clayton's complaint at least has a constitutional connection. Article II, section 8 of the Florida Constitution provides that: "A public office is a public trust. The people shall have the right to secure and sustain that trust against abuse." Article II, section 5 requires the public officer to take an oath to "faithfully perform the duties" of his office, a duty that presumably includes the obligation to obey the statutory laws of this state. If such public officer, or group of public officers, refuse to follow statutory directions, they have violated an obligation created by the constitution.
[3] Rickman v. Whitehurst, 73 Fla. 152, 155, 74 So. 205, 206 (Fla.1917), although cited by the supreme court as authority for reaffirming the Fornes rule, lends at least some support to the proposition that standing is appropriate if the public body acts without authority in disposing of public assets or in increasing a taxpayer's burden. Rickman holds: "In the first place the complainant has the right to maintain the bill if the acts complained of were unauthorized and not within the powers of the board of county commissioners, and tended to produce a resultant injury to the complainant by increasing the burden of his taxes. The right of a citizen and taxpayer to maintain a suit to prevent the unlawful expenditure by public officials of public moneys, unless otherwise provided by legislative enactment, is generally recognized. The nature of the powers exercised by county commissioners who are vested by law with the power of levying taxes for county purposes and the expenditure of county funds, the danger of the abuse of such powers which are delegated to them by legislative enactment and the necessity for prompt action to prevent their flagrant abuse and irremedial injuries flowing therefrom would seem to fully justify courts of equity in interfering upon the application of a county taxpayer and citizen ... The principle on which the right rests is that the taxpayer is necessarily affected and his burden of taxation increased by any unlawful act of the county commissioners which may increase the burden to be borne by the taxpayers of the county, and no relief from such injury is obtainable elsewhere than in a court of equity ... [standing was denied in this case because] [t]here is no allegation of special injury to the complainant, nor that the cost of constructing the roads and bridges by the method proposed will entail a greater cost than the method prescribed by the general act, nor that the money is being wasted or improvidently expended. What, then, gives the complainant his standing in equity? Is it the mere abstract conception that an act done by the county officials not in strict conformity of law ipso facto operates to injure a citizen of the county? If so, then any citizen of the county, whether taxpayer or not, whether he resides in the special road district or beyond its limits, may maintain the action."