DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**SIDNEY F. DINERSTEIN,**
Appellant,

v.

**SUSAN BUCHER,** Supervisor of Elections in Palm Beach County, **THE CITY OF PALM BEACH GARDENS, PATRICIA SNIDER,** City Clerk of Palm Beach Gardens, **VOTERS IN CONTROL,**
Appellees.

No. 4D19-755

[January 15, 2020]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Janis Brustares Keyser, Judge; L.T. Case No. 502018CA010672XXXXMB.

James D'Loughy of AdvisorLaw, PLLC, Palm Beach Gardens, for appellant.

R. Max Lohman of Lohman Law Group, P.A., West Palm Beach, for appellee City of Palm Beach Gardens.

MAY, J.

The plaintiff appeals a final judgment in favor of the City of Palm Beach Gardens ("City"). He argues the trial court erred in applying the "magic words" test in finding the City did not expressly advocate in favor of a ballot initiative and in finding the ballot initiative's title and summary valid. We disagree and affirm.

In May 2018, the City Council passed and adopted three ordinances to appear on the August 2018 City Election Ballot as Ballot Question Nos. 1, 2, and 3 (collectively "August Charter Amendments").

Ballot Question No. 1 (Ordinance 7-18)

Sought to increase term-limits for city council members from two to three consecutive terms.

<u>Ballot Question No. 2</u> (Ordinance 8-18)

Consisted of several amendments to remove and modify provisions of the City Charter.

<u>Ballot Question No. 3</u> (Ordinance 9-18)

Sought to remove the requirement that the City Manager be a resident within one year of appointment.

In an article published August 17, 2018, the Palm Beach Post reported that the City paid Cornerstone Solutions Florida, LLC, a local political consulting company, $43,200 to plan, manage, and execute the City's voter education campaign before the March 2018 City Election. And, the City planned to spend no more than about $65,000 on the August 2018 campaign.

On August 22, 2018, the plaintiff filed a verified emergency petition for declaratory and injunctive relief as to the misuse of public funds for unlawful government advocacy and injunctive relief against a political action committee concerning the dissemination of deceptive advertisements.

Ballot Question No. 2 passed in the August election, but Ballot Questions Nos. 1 and 3 did not.

Ballot Question No. 2 provided:

> **BALLOT TITLE:** CITY OF PALM BEACH GARDENS REFERENDUM QUESTION NO. 2
>
> **BALLOT SUMMARY:** SHALL THE CITY CHARTER BE AMENDED TO REMOVE PROVISIONS THAT ARE OUTDATED, UNNECESSARY OR CONFLICT WITH STATE LAW INCLUDING MUNICIPALITY, CITY CLERK, AND CITY TREASURER SPECIFIC POWERS/DUTIES; OATH OF OFFICE; MERIT SYSTEM; PROCEDURE REMOVING COUNCILMEN, QUALIFICATION OF ELECTORS, COUNCIL MEETING AND PROCEDURE, AND OTHER PROVISIONS; REVISE COUNCIL-MANAGER RELATIONSHIP; CHANGE FILLING OF VACANCIES; LIMIT INITIATIVE/REFERENDUM; DEFINE "FULL TERM"; REMOVE COUNCIL CONFIRMATION OF EMPLOYEES AND OTHER CHANGES; AS PROVIDED IN EXHIBIT A, ORDINANCE 8?

**BALLOT QUESTION:** SHALL THE ABOVE DESCRIBED QUESTION NO. 2 BE ADOPTED?

YES

NO

In Count I of his Second Amended Complaint, the plaintiff alleged the City's expenditures to promote passage of the August Charter Amendments violated Article I, section 1 of the Florida Constitution ("Count I"), as established in *Palm Beach Cty. v. Hudspeth*, 540 So. 2d 147 (Fla. 4th DCA 1989). The plaintiff asked the trial court to declare the City's use of public funds to advocate passage of Ballot Question No. 2, without affording him the same opportunity to access funds to present his view, violated his constitutional rights under Article I, section 1 of the Florida Constitution. The plaintiff also alleged the ballot title and summary for Ballot Question No. 2 violated section 101.161(1), Florida Statutes (2009). He asked the trial court to declare Ballot Question No. 2 invalid and misleading.

The City moved for summary judgment. As to Count I, the City argued the plaintiff failed to allege a special injury to assert taxpayer standing or a sufficiently specific constitutional challenge pursuant to Article I, section 1 of the Florida Constitution.[1] The City argued *Hudspeth* was obsolete because we specifically acknowledged the lack of legislation concerning the propriety of local government expenditures related to campaign literature. The City pointed to section 106.113, Florida Statutes (2009), enacted after *Hudspeth*, as controlling.

---

[1] At oral argument, the City admitted the plaintiff has standing. In *Hudspeth*, we stated:

> While the county not only may but should allocate tax dollars to educate the electorate on the purpose and essential ramifications of referendum items, it must do so fairly and impartially. . . . The funds collected from taxpayers theoretically belong to proponents and opponents of county action alike. To favor one side of any such issue by expending funds obtained from those who do not favor that issue turns government on its head and is the antithesis of the democratic process.

540 So. 2d at 154. In doing so, we tacitly suggested standing exists to challenge a government's expenditure of funds for advocacy of a particular position on a referendum.

Section 106.113 prohibits local governments from expending public funds on political advertisements that concern an issue subject to a vote of the electors. The City opined that the campaign literature did not meet the definition of a "political advertisement" as defined in section 106.011(15), Florida Statutes (2009). Specifically, the City argued that the Florida Legislature's inclusion of "expressly advocate" in the definition of "political advertisement" intended the "magic words" standard in *Buckley v. Valeo*, 424 U.S. 1 (1976), to apply. Pursuant to the "magic words" standard, the City argued the campaign literature was not a "political advertisement" because none of the literature contained the "magic words."

The trial court found that section 106.113 controlled and that the "magic words" test applied. "Since none of the *Buckley* 'magic words' were used in the City's communications," the trial court found the City did not expressly advocate for Ballot Question No. 2. Therefore, the trial court found that the City had not violated section 106.113 or Article 1, section 1 of the Florida Constitution. The trial court further found the title and summary of Ballot Question No. 2 were valid and not misleading.

The plaintiff appeals that judgment.

- ***The Use of Public Funds***

"The right of a citizen and taxpayer to maintain a suit to prevent the unlawful expenditure by public officials of public moneys, unless otherwise provided by legislative enactment, is generally recognized." *Krantzler v. Bd. of Cty. Comm'rs of Dade Cty.*, 354 So. 2d 126, 128 (Fla. 3d DCA 1978) (quoting *Rickman v. Whitehurst*, 73 Fla. 152, 74 So. 205, 207 (1917)).

> As the trial court recognized, in *Rickman v. Whitehurst*, 73 Fla. 152, 74 So. 205, 207 (1917), the Florida Supreme Court construed the right of citizen-taxpayers to sue the state by requiring that, when challenging government policy or actions, a taxpayer must allege a "special injury" which differs in kind and degree from that sustained by other members of the community at large. In *Department of Administration v. Horne*, 269 So. 2d 659 (Fla. 1972), the court created an exception to the *Rickman* standing rule. "[W]here there is an attack upon *constitutional* grounds based directly upon the Legislature's taxing and spending power, there is standing to sue without the *Rickman* requirement of special injury." *Id.*

4

at 663. To withstand dismissal on standing grounds, however, the challenge must be to legislative appropriations.

*Council for Secular Humanism, Inc. v. McNeil*, 44 So. 3d 112, 121 (Fla. 1st DCA 2010).

The plaintiff first argues the trial court used the wrong legal test in applying section 106.113 to the ballot initiative campaign purchased by the City. In so doing, he argues the court improperly made factual findings at the summary judgment stage. Specifically, he suggests the trial court incorrectly applied the *Buckley* "magic words" test instead of the "functional equivalent of express advocacy"[2] test established by *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 324-25 (2010). We agree with the plaintiff that the "functional equivalent" test should have been applied, but even under that test, the result is the same. The City did not violate section 106.113 or Article I, section 1 of the Florida Constitution.

In *Citizens United*, the Supreme Court announced the "functional-equivalent test." A "court should find that [a communication] is the functional equivalent of express advocacy only if [it] is susceptible of no reasonable interpretation other than as an appeal to vote for or against a specific candidate." *Citizens United*, 558 U.S. at 324-25.

Section 106.113(2), Florida Statutes, provides in part:

> A local government or a person acting on behalf of local government may not expend or authorize the expenditure of . . . public funds for a political advertisement or electioneering communication concerning an issue, referendum, or amendment, including any state question, that is subject to a vote of the electors.

Section 106.011(8)(a) defines a "political advertisement" as, "a paid expression in a communications medium prescribed in subsection (4), . . . which expressly advocates the election or defeat of a candidate or the approval or rejection of an issue."

So, the issue is whether the City's expenditure was for a "political advertisement." Using the "magic words" test, the trial court found it was not. We reach the same conclusion using the "functional equivalent" test articulated in *Citizens United*.

---

[2] The functional equivalent of express advocacy has been shortened to functional equivalent for brevity.

Having reviewed the records, the City expended resources to bring public awareness to the ballot initiative. The City provided literature which explained that a Charter Review Committee recommended three ballot initiatives. The literature indicated that it contained "What You Should Know" about the initiatives. The City created a website where citizens could learn more information and disseminated a voter's guide. Robocalls were made in which the Mayor provided a website address and a hotline number where citizens could learn more.

In short, the City did not expressly advocate a position. The literature paid for by the City was "not the functional equivalent of express advocacy." The City neither violated section 106.113, nor Article 1, section 1 of the Florida Constitution. The trial court correctly entered summary judgment.[3]

- ### *The Ballot Title and Summary*

The plaintiff next argues the ballot title and summary were misleading and therefore invalid. We disagree.

We review de novo a trial court's finding that a ballot title and summary are valid. *See City of Riviera Beach v. Riviera Beach Citizens Task Force*, 87 So. 3d 18, 21 (Fla. 4th DCA 2012). "Only where the record shows that the ballot language is 'clearly and conclusively defective' should the court invalidate the ballot question." *Id.* at 22 (quoting *Armstrong v. Harris,* 773 So. 2d 7, 11 (Fla. 2000)).

"Section 101.161(1) requires that a constitutional amendment 'submitted to the vote of the people' include a title 'not exceeding 15 words in length, by which the measure is commonly referred to,' and a ballot summary that explains 'the chief purpose of the measure' in no more than seventy-five words." *Cty. of Volusia v. Detzner*, 253 So. 3d 507, 510 (Fla. 2018).

---

[3] The plaintiff also argues the Division's interpretation in *DE Op.* 12-05 is not controlling because the issue here challenges the actions of local government officials, not the agencies themselves. Because the Division of Elections is not a party, the plaintiff suggests the Division's interpretation of section 106.113 is irrelevant. The Division has the authority to render advisory opinions upon request by specified government officers concerning campaign finance law. *See* § 106.023, Fla. Stat. (2009). Because we reach our conclusion as a matter of law, and without deference to *DE Op.* 12-05, this issue is moot.

"In assessing conformity with these requirements, we consider two questions: '(1) whether the ballot title and summary, in clear and unambiguous language, fairly inform the voter of the chief purpose of the amendment; and (2) whether the language of the title and summary, as written, misleads the public.'" *Id.* (citations omitted).

A ballot title need only be a caption "by which the measure is commonly referred to." § 101.161(1), Fla. Stat. (2018). A ballot summary must be "clear and unambiguous" and "shall be an explanatory statement . . . of the chief purpose of the measure." *Id.*

Where the required summary does not inform the voters of the "true effect" of the ballot proposal, courts are required to direct that the matter be removed from the ballot. *Let Miami Beach Decide v. City of Miami Beach*, 120 So. 3d 1282, 1292 (Fla. 3d DCA 2013). In short, a ballot summary can neither "hide the ball" as to the measure's true effect, nor mislead by "flying under false colors." *Armstrong*, 773 So. 2d at 16-18.

A ballot summary "hides the ball" when its chief purpose is obscured and the legal effect of approving the proposed measure is impossible to ascertain by reading it. *Id.* A ballot summary "flies under false colors" when it is misleading such that the voter perceives that the proposed measure will achieve one thing when it will achieve something different. The ballot title and summary need not explain every detail or ramification of the proposed amendment, only the chief purpose. *Carroll v. Firestone*, 497 So. 2d 1204, 1206 (Fla. 1986).

Here, the summary for Ballot Question No. 2 begins by asking "to remove provisions that are outdated, unnecessary or conflict with state law" and then lists various topics, which are generally understandable. It ends the list with "as provided in Exhibit A, Ordinance 8?" While this reference requires the reader to refer to another document, it is not inherently misleading. *See e.g.*, *Matheson v. Miami-Dade Cty.*, 187 So. 3d 221, 230 (Fla. 3d DCA 2015) (holding referendum did not "hide the ball" or "fly under false colors" where other documents were referenced). Here, the exhibit contained a track-changes version of the charter, indicating the precise proposed additions and deletions.

The Ballot Title was a caption to which the initiative could be referred. The Ballot Summary explained the chief purpose of the amendment—to remove inconsistent and outdated provisions. The summary neither hid the ball, nor misled the public. We therefore affirm.

7

*Affirmed.*

WARNER and GROSS, JJ., concur.

* * *

**Not final until disposition of timely filed motion for rehearing.**